IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT REX EDWARDS,          )
#225984,                     )
                             )
          PETITIONER,        )
                             )
VS.                          )    CIVIL ACTION NO.
                             )    2:06-CV-177-WKW
                             )
BILLY MITCHEM, et al.,       )
                             )
          RESPONDENTS.       )

## ANSWER

Come now the Respondents in the above styled cause, by and through the

Attorney General of the State of Alabama, in response to this Court's order on ,

and answers Robert Rex Edwards's instant habeas corpus petition as follows:

1. A jury convicted Edwards of two counts of sexual abuse in the first

degree, one count of production of obscene matter containing a child under the age

of 17, and 30 counts of possession of obscene matter containing a child under the

age of 17. (Ex. A, C. 3-5, 138-139, 141-155) Chilton County Circuit Court Judge

Sibley Reynolds sentenced Edwards on July 29, 2002, to serve ten years in prison

on the sexual abuse charges, to be served consecutively. (Ex. A, C. 194, 237) He

was also ordered to serve ten years each on the remaining charges; these sentences

were ordered to run concurrently with the sentences imposed on the sexual abuse

charges. (Ex. A, C. 194, 237)

2. Under the authority of Girard v. State, 883 So. 2d 717, 722-23 (Ala.

2002), Edwards's thirty convictions for possession of obscene matter were reduced

to one count of possession, on August 26, 2004, in a state post-conviction

proceeding. (Ex. J, C. 71) He received a ten-year sentence for this single count of

possession to run concurrently with the other counts. (Ex. J, C. 71)

3. Edwards filed a federal habeas corpus petition, under Title 28 U.S.C. §

2254, challenging his four convictions. Edwards appears to raise the following

claims in his petition:

> a. The search was illegal because it listed the wrong individual on the
>
> warrant, with an apparently different social security number than
>
> Edwards. (Edwards's pet., p. 5) "Search was made by the use of
>
> priors of other person that was not me. All warrants were for
>
> Robert Scott Edwards 212 62 6138[.] Later changed while in
>
> custody or waiting tr[ia]l to Robert Rex Edwards 420 86-5715, but
>
> they messed up and did not cover up completely[.]" (Edwards's
>
> pet., p. 5) The search was also illegal because he never received a
>
> property receipt and never received certain items back. (Edwards's
>
> pet., p. 5) Further, the police broke into his car and stole his

briefcase when he came to court, and he never received a property

receipt for the briefcase or its contents.

> Never got property receipt for all stolen
> from my home (CV-01-214) [A state
> forfeiture case, see Ex. O]  None returned to
> me to include my business nic-nac grafts &
> gifts.  On June 28, 2002[,] the cops broke
> into my car and stole my briefcase that I
> took to court.  They forced the lock.  Inside
> was books and pictures from stores and
> libraries.  No receipt given.

(Edwards's pet., p. 5)

b. The arrest warrants were faulty for the same reasons as listed in

ground "A."  (Edwards's pet., p. 5)  Further, Edwards was

> [r]earrested and held for 11 days without
> seeing a judge or attorney.  30 counts later
> (2 ½ years) got 29 of the 30 set aside.  Judge
> Hardesty said she was never informed by the
> sheriff that I was in the jail.  A common
> practice of the law in Chilton County,
> Alabama.  All arrests warrants were issued
> after I was arrested not presented at my
> home June 22, 2001.

(Edwards's pet., p. 5)

c. Edwards's statement was coerced because "statements made while

handcuffed not of free will."  (Edwards's pet., p. 5)  "Due to the

known history of beating by law enforcement -- statement written

by Lt. James 'Jay' Edwards not the accused.  Later statement

written by the accused not Maranda used to notify of rights. Was

told I could go home if I wrote a statement." (Edwards's pet., p. 5)

d. The State violated discovery principles under <u>Brady v. Maryland,</u>

and also violated the Confrontation Clause. (Edwards's pet., p. 7)

> Even when the judge granted discovery[,]
> the DA would not abide by it. They said I
> had no right to what I own. Not even
> copies. I never got to review the videos
> (Confrontation Clause) or to interview any
> witnesses against me to prove false
> statements. However, State Witnes[s]
> Wulke[1] was later convicted and found out
> the deal with the DA. Wulke also had prior
> felony not disclosed to the jury either nor
> [the] deal to reduce the sodomy charges[.]

(Edwards's pet., p. 7)

e. The principles of Double Jeopardy were violated. "Ground- Double

Jeopardy. Proven on Counts 4-33 which made 5-33 set aside

illegal arrest on June 22, 2001 and held for 11 days in jail without

bond, attorney or hearing. Counts 2-3 are also Double Jeopardy

involving more than 1 person at the same time[.]" (Edwards's pet.,

p. 9)

f. The petit and grand juries were unconstitutional. Edwards's claim

appears to be that the possession of child pornography would

---

[1] Edwards refers to the witness as "Wulke," but the witness's last name was
"Wutke." (Ex. A, R. 38)

criminalize nude pictures of children taken by their parents to show the growth of the child. Further, the pictures he had were not lewd, but were mere nude pictures. Also, he "knew a couple of the jurors in school and they did take pictures of themselves and their girlfriends under 17. In fact it was a video he made." (Edwards's pet. p. 9)

g. He received ineffective assistance of counsel.

> I had trouble with attorneys Boggs had me bring pictures I found in libraries and in books of nude subjects (children) and never presented them or gave them back to me. On Dec. 10, 2001 I was told by Hayes that they cannot be my attorney unless I gave her $4,000.00. I only had $12.00

(Edwards's pet, p. 11)

> Karn was appointed and I fired him based on our conversation in his office in 2001. [Judge] Reynolds reappointed him 2 more times. Finally on the day of my jury selection[,] Reynolds made him my legal advisor. He never said a word which continued on court day. Even the Alabama Assistance general made a note of Karn's silence. He also represented a family member of the plaintiff's party (conflict of interest)[.] He also knew that DHR had record of prior cases on the plaintiff[]s that he did not disclose to the court.

(Edwards's pet., p. 11)

> Huntley was appointed to do my direct
> appeal[,] but only on CC-01-244[.]  No one
> did CV-01-214 fruits of crime not
> Code/1975 § 13-12-198 by law.

(Edwards's pet. p. 11.  Note, the pages in his petition appear to

have been reversed, the following paragraph is page 10.)

> Huntley only used my pro-se against me
> nothing on the constitutional grounds I
> established in court.  She also did the same
> thing to Nichalos Turner[,] 854 So2d 162
> (Al[a.] Cr[im.] Ap[p.] 2003[.]  Turner was
> resentenced illegally again on the same
> indictment on Aug. 9, 2004.  Since [Judge]
> Reynolds had reversed my pro-se status I
> was not able to appeal case # CV-01-214
> and lost over $10,000 in software, books,
> and other thing[s].  Along with my business
> Nic-Nac Grafts and Gifts.  Lisenced
> February 2001.  A SMC Novilty Business
> by Internet and vending.  None of my
> convictions were challenged by Huntley and
> my pro-se status was affirmed 2 for and 1
> against.

(Edwards's pet., p. 10)

    3. This Court should deny Edwards's relief because he has not exhausted his

federal habeas corpus claims in state court, and he is now procedurally defaulted

from doing so.  "[T]he exhaustion requirement and procedural default principles

combine to mandate dismissal [of the federal habeas claims.]  Bailey v. Nagle, 172

F.3d 1299, 1303 (11th Cir. 1999).

## Procedural History

### A.    Trial

#### 1)    Pre-trial

4. Before Edwards's trial, his appointed counsel filed a motion to suppress incriminating statements Edwards made to the authorities. (Ex. A, C. 118-19)  A suppression was held, and the motion to suppress was denied. (Ex. A, C. 2)  This hearing was not included in the state appellate record.

5. Edwards's appointed counsel (Attorneys Boggs and Hayes) moved to withdraw as his attorney, citing Edwards's lack of cooperation, on December 11, 2001. (Ex. A, C. 2, 126); the trial court granted the motion on January 7, 2002. (Ex. A, C. 2)  Edwards filed a motion requesting the opportunity to represent himself on January 16, 2002. (Ex. A, C. 127)  Edwards's motion read, "MOTION FOR MYSELF TO ACT AS MY ATTORNEY[.]  THIS IS TO INFORM THE COURT THAT I ROBERT REX Edwards IS PLANNING TO ACT AS MY OWN ATTORNEY.  TO GET TO THE TRUTH." (Ex. A, C. 127)  The motion was granted on April 1, 2002, but the court appointed David Karn to act as standby counsel, to assist Edwards in his defense. (Ex. A, C. 3)  There is no transcript of these proceedings in the appellate record.  Edwards also filed a motion on April 19, 2002, requesting that Karn be removed as his legal advisor. (Ex. A, C. 134)  It does not appear that this motion was ever expressly ruled on.

6. The voir dire examination of the jury panel began on June 24, 2002. At the voir dire examination of the jury panel, Edwards, accompanied by David Karn, asked if anyone on the panel had any prejudices against persons who are gay or bisexual. (Ex. A, R. 21)

7. The following proceedings took place outside the presence of the jury on the day of trial, June 28, 2002, before opening statements.

> MR. KARN: Your Honor, I would just like to clarify for the record that my role in this is to be an advisor to Mr. Edwards should he request it, but that I will not be having a particular active role in the trial of this matter. I just wanted it stated for the record that if Mr. Edwards does wish me to assist him in some way, then I will be glad to do that. The Court should also be aware that due to my involvement or lack of involvement in this case, I don't have much of a court file -- a case file. Consequently, the particulars of this case are not with me due to the way that my appointment was made.

> THE COURT: Mr. Edwards, is that the way you would have it, you want it to be?

> MR. Edwards: Yes, sir.

> THE COURT: So you understand that in the event that you want some assistance, Mr. Karn is here available for you?

> THE DEFENDANT: Yes, sir.

(Ex. A, R. 24-25)

## 2)    Evidentiary Portion of the Trial

8. Donald J. Wutke was Edwards's employer at Domino's Pizza where Edwards worked. He testified that Edwards would discuss the children that lived

at Edwards's trailer park where he lived. Edwards knew everything about the children, such as what they looked like, what clothing they wore, and how old they were. Edwards also knew when the parents were home. On one occasion, Edwards was reprimanded with a written warning for exposing himself to another employee. (Ex. A, R. 38-40)

9. On or around April 5, 2001, Edwards passed out several computer disks at work and gave one to Wutke. When Wutke took the disk home and placed it in his computer, he discovered that there were child pornography images on the disk. He surmised that the ages of the children were between the ages of four and fourteen. He immediately removed the disk and called the sheriff's department. He gave a written statement to the police that stated Edwards asked him if he would like some computer disks, and Wutke answered yes. The disk contained child pornography. Wutke did not look at the other disk. Edwards told Wutke that he knew about the children in his trailer park and what age they were. Edwards also knew when their parents were home. Wutke believed Edwards to be approximately 47 years old. On cross-examination, Wutke admitted that the date might not have been April 5, 2001, but that he was positive Edwards gave the disk to him, and it contained child pornography. (Ex. A, R. 40-44, 46; Ex. D, p. 1-2)

10. A.B., mother of J.B. and T.B., and her children were neighbors of Edwards. (R. 51, 55) The children became acquainted with Edwards and played

over in his yard. (Ex. A, R. 52-55) After some time, once A.B. felt comfortable with Edwards, the children were allowed to go inside Edwards's trailer and they would play on his computer. (Ex. A, R. 56) One night, she allowed them to spend the evening over at Edwards's trailer. (Ex. A, R. 56) The next morning, J.B. was very quiet and acting strange. (Ex. A, R. 56-57) J.B. told her that Edwards touched him while he spent the night. (Ex. A, R. 57) She also discovered her son was looking at nude pictures of other boys at Edwards's home. (Ex. A, R. 57) S.K., a friend of J.B.'s, also spent the night with Edwards. (Ex. A, R. 57) J.B. was 11, or almost 11, at the time, and T.B. was just turning nine or ten. (Ex. A, R. 56)

11. J.B. testified that Edwards taught him how to use computers and he would play games on them. (Ex. A, R. 71-73) Edwards also showed J.B. pictures on the computer of nude boys in various sexual positions. (Ex. A, R. 74; Ex. D, p. 2) The night that J.B. stayed over, S.K. and he stayed up late and played computer games and watched television. (Ex. A, R. 74) Edwards showed them some pictures on the computer. The pictures were of nude men, women, and children. (Ex. A, R. 78; Ex. D, p. 2) S.K. and J.B. also played with condoms that they found on top of Edwards's computer. (Ex. A, R. 75) Edwards was aware that they were playing with the condoms. (Ex. A, R. 76) That evening after J.B. had gone to sleep, he awoke to Edwards touching his penis with his hands. (Ex. A, R. 75; Ex.

D, p. 2) J.B. was 11[2] years old at the time of the incident. (Ex. A, R. 77) The

incident occurred approximately a week before May 7, 2001. (Ex. A, R. 76)

12. J.B. gave a signed and written statement to the police on May 7, 2001.

(Ex. A, R. 76) The statement read that Edwards had been touching J.B. "in my

privates and looking and groping it." (Ex. A, R. 78) This had been occurring for

two months. (Ex. A, R. 78) J.B. told Edwards to stop, but he would not. (Ex. A,

R. 78) Edwards told J.B. that J.B. "gave him a hard on and that [Edwards] is

bisexual and that he want to blow me." (Ex. A, R. 78) Edwards told J.B. that if he

ever wanted Edwards "to do it he would." (Ex. A, R. 78) Edwards showed "his

privates" to J.B.. (Ex. A, R. 78) He also showed him "dirty pictures" of "woman,

children, and guys". (Ex. A, R. 78)

13. S.K., J.B.'s friend, testified that he stayed at Edwards's home by himself

the night before J.B. stayed over and the following night with J.B.. (Ex. A, R. 89-

90) That night Edwards touched S.K. on his penis with his hand. (Ex. A, R. 90-

91; Ex. D, p. 2) S.K. told Edwards not to, but "he kept coming over to me." (Ex.

A, R. 90) According to his statement, Edwards touched him five times, and then

continued several more times. (Ex. A, R. 93) S.K. had not planned on spending

---

[2] The Court of Criminal Appeals's opinion indicates that J.B. was nine years-old at
the time of the abuse. (Ex. D, p. 2) This discrepancy is irrelevant because if the
victim is under 12 years of age and the perpetrator is over 16 years of age, the
abuse constitutes sexual abuse in the first degree. See Ala. Code § 13A-6-66(a)(3)
(1994).

the night the following evening, but J.B. was going to stay over there.  (Ex. A, R. 90)  That evening Edwards touched both J.B. and S.K..  (Ex. A, R. 93-94)  The boys told him to stop, but he did not.  (Ex. A, R. 94)  He followed them into the computer room and continued to touch them.  (Ex. A, R. 94)  S.K. was ten at the time of the abuse.  (Ex. A, R. 93)

14. Videotaped interviews of the victims (apparently the videos that Edwards complains of, which violate the principles of the Confrontation Clause, Edwards's pet., p. 7) were played for the jury, without objection.  (Ex. A, R. 121-22)

15. Gary Graves, a computer forensics officer, testified that Edwards had thousands of pornographic images on his computer.  (Ex. A, R. 125, 157)  The authorities believed there were 50-60 images of child pornography, but they decided to charge him only with possession of 30 images.  (Ex. A, R. 158)  The ages of the children in the pictures ranged in estimation from nine to sixteen.  (Ex. A, R. 163-167)

16. Edwards made a statement on his own behalf.  He testified that the evening that the boys spent the night at his home, J.B. and S.K. were in the computer room.  (Ex. A, R. 185)  J.B. said that he had a "hard on".  (Ex. A, R. 185)  Edwards walked over and saw they were watching an adult movie on the computer.  (Ex. A, R. 185)  They then began to masturbate.  (Ex. A, R. 185)  S.K.

and J.B. then allegedly told Edwards that they were forced to perform sexual acts on family members. (Ex. A, R. 186) According to Edwards, "They were at it, stroking it." (Ex. A, R. 186) J.B. asked if Edwards would touch his penis, and Edwards did while J.B. wore a condom. (Ex. A, R. 186; Ex. D, p. 2) On cross-examination, he admitted to touching J.B.. (Ex. A, R. 189; Ex. D, p. 2) He also admitted that in some of the pictures he possessed, the girls appeared to be under 17. (Ex. A, R. 196, 200) He argued, however, that the web sites advertised that the models were over 18, and there were many women who were older than what they appeared to be. (Ex. A, R. 196; Ex. D, p. 2)

17. After Edwards's arrest the police Mirandized him. (Ex. A, R. 107-108) In the police car, Edwards told the officers he had touched the two boys on their penis. (Ex. A, R. 111) In a signed statement by Edwards, he admitted that S.K. and J.B. spent the night at his house. (Ex. A, R. 112) Edwards showed them pornographic images. (Ex. A, R. 112) The boys discussed being sexually active. (Ex. A, R. 112) J.B., S.K., and Edwards showed each other their penises. (Ex. A, R. 112) Edwards "placed his hand around each boys's penis and stroked it [...] once." (Ex. A, R. 112) The boys were wearing condoms with lotion. (Ex. A, R. 112) The previous evening, S.K. had spent the night, but according to Edwards, nothing happened except that S.K. sat in his lap. (Ex. A, R. 112) The statement

was written by Lieutenant Edwards and signed by Robert R. Edwards as a true and accurate statement. (Ex. A, R. 112-13)

18. Edwards was again advised of his rights at the police station, and signed a form waiving those rights. (Ex. A, R. 114-15) He reiterated that the boys began watching adult movies, and placed condoms on their penis. (Ex. A, R. 118) The statement continues, "[J.B.] wanted me to see how big his was so I touched him on his penis through the rubber." (Ex. A, R. 119) S.K. told Edwards "he wanted to see if mine was bigger than his dad's, so I showed him mine." (Ex. A, R. 119) The police concluded after investigation, that the allegations from Edwards of sexual abuse concerning the boys' parents were false. (Ex. A, R. 120)

### 3)    Verdict and Sentencing

19. The jury found Edwards's guilty of the two counts of sexual abuse, the one count of production of obscene matter containing a child under the age of 17, and the 30 counts of possession of obscene matter containing a child under the age of 17. (Ex. A, C. 3-6, 138-139, 141-155) Edwards was sentenced on July, 29, 2002, to ten years in prison on each of the sexual abuse charges. (Ex. A, C. 194, 237) These sentences were ordered to run consecutively. (Ex. A, C. 194, 237) He was also ordered to serve ten years each on the remaining charges; these sentences were ordered to run concurrently with the sentences imposed on the sexual abuse

charges.  (Ex. A, C. 194, 237)  Edwards was also ordered to pay various fines,

assessments, and court costs.  (Ex. A, C. 194, 237)

20. At the sentencing hearing, Edwards also argued that the pornographic

pictures found on his computer did not constitute pornography.  (Ex. A, R. 236;

Ex. D, p. 4)

**B.    Direct Appeal**

21.  Edwards filed a notice of appeal on August 2, 2002, and requested the

assistance of counsel.  (Ex. A, C. 197)  The sole issue raised on appeal was that

Edwards's waiver of counsel was not knowingly and intelligently given.  (Ex. B, p.

9-11; Ex. D, p. 2)  Edwards's appointed appellate counsel argued that the trial

court failed to conduct a <u>Faretta</u>[3] hearing, and did not "advis[e] [Edwards] of the

dangers of self-representation."  (Ex. D, p. 2)

22. The Alabama Court of Criminal Appeals, on May 30, 2003, concluded

that Edwards expressly wished to represent himself and waive counsel; therefore,

the burden was on him, to show "that his waiver of his right to counsel was not

knowingly, intelligently, or voluntarily made.  <u>Tomlin[ v. State]</u>,  601 So. 2d 124[,

128 (Ala. 1991)]."  (Ex. D, p. 1, 11)  <u>Tomlin</u> relied on United States Supreme

Court precedent from <u>Moore v. Michigan</u>, 355 U.S. 155, 161-62 (1957) and

<u>Carnley v. Cochran</u>, 369 U.S. 506, 516-17 (1962), for this principle.  The court

---

[3] <u>Farreta v. California</u>, 422 U.S. 806 (1975).

examined factors cited in <u>United States v. Cash</u>, 47 F.3d 1083, 1088-89 (11th Cir. 1995) (Ex. D, p. 11), and concluded "after reviewing the record on appeal ... that, under the totality of the circumstances, the appellant has failed to demonstrate by a preponderance of the evidence that he did not knowingly, intelligently, and voluntarily waive his right to counsel." (Ex. D, p. 12)

23. The Alabama Court of Criminal Appeals issued its certificate of judgment on June 17, 2003. (Ex. E) Edwards's appellate attorney filed a motion to file the application for rehearing out of time on June 19, 2003 (Ex. F), which the court denied on June 24, 2003. (Ex. G) Edwards's attorney, nevertheless, filed a petition for a writ of certiorari in the Supreme Court of Alabama. (Ex. H) The Supreme Court of Alabama struck the petition, on July 10, 2003, "for failure to comply with Rule 39(c)(1), Alabama Rules of Appellate Procedure. (Ex. I) Rule 39(c)(1) requires than an application for rehearing to have been filed in the Alabama Court of Criminal Appeals before the Supreme Court of Alabama will consider certiorari review.

## C.    State Post-Conviction Petition

### 1)    Post-Conviction Petition and Hearing

24. Edwards filed his Rule 32 petition on September 24, 2003. (Ex, J, C. 1) In Edwards's convoluted *pro se* petition, he appears to raise the following claims in the initial petition:

1.) Nudes and nudist photography are not pornography (Ex. J, C. 11)

and many of the

> 1000's of ... images on [his] computer [were not] of
> minors, not all were sexual, and not all were "child porn"
> as labeled by Sgt. Gary Graves who testified that he
> est[i]mated the age of the persons in the photographs. He
> used his own children to gauge the age of the persons in
> the photographs[,] [which] shows he is not an expert
> witness on child growth rates.

(Ex. J, C. 12) The pictures were not child pornography because there was no

sexually explicit conduct present in the photographs, and Alabama's child

pornography laws are overbroad.  (Ex. J, C. 19-22)

2.) Illegal seizure of his "equipment and stuff on

constitutio[n]al grounds." (Ex. J, C. 13)  Evidence was illegally

seized based on an allegedly improper warrant.  (Ex. J, C. 19)

3.) The State violated many discovery rules (Ex. J, C. 15-18),

including not allowing Edwards to copy files (Ex. J, C. 15), not

allowing him to interview State's witnesses, but the State interviewed

his witnesses (Ex. J, C. 15), not giving him copies of the underage

pornographic pictures (Ex. J, C. 16), and not giving him access to

Department of Human Resources records about his sexual abuse

victims.  (Ex. J, C. 17)

4.) Chilton County Circuit Judge Reynolds did not allow Edwards to record the court proceedings, and the "court reporter only type[d] what the judge wanted her to." (Ex. J, C. 15-16)

5.) Sergeant Gary Graves lied about Edwards downloading pornography from Birmingham, and was not an expert witness in pediatrics or child development. (Ex. J, C. 16, 22, 29)

6.) Robert Wutke lied about Edwards inappropriately exposing himself at work. (Ex. J, C. 16, 29)

7.) The trial court failed to subpoena witnesses. (Ex. J, C. 18, 29)

8.) Trial court failed to produce six audio recordings of a witness killed in an auto accident. (Ex. J, C. 18)

9.) Judge Reynolds should have recused himself from the suppression hearing because he issued the search warrant. (Ex. J, C. 18)

10.) Edwards signed a coerced confession under duress. (Ex. J, C. 22, 25)

11.) Edwards's indictment was vague and incomplete. (Ex. J, C. 23)

12.) Edwards's Fifth Amendment rights were violated at his arrest and at trial by hearsay evidence from Angela Bryant. (Ex. J, C. 25)

13.) Edwards received ineffective assistance of counsel because he did not have appointed representation "from the beginning of the arrest in violation of Alabama v. Shelton." His retained counsel would not cooperate with him, nor would his appointed legal advisor, David Karn. (Ex. J, C. 26)

14.) The trial court was without jurisdiction to "render judgment or to impose the sentence" because the indictment was invalid, he received 10 years with no good time in violation of the Fourteenth Amendment, full discovery was not allowed, and Edwards's First Amendment Rights are being violated. (Ex. J, C. 27)

15.) Newly discovered evidence has been discovered that Donald Wutke was under investigation for a felony, and had a prior felony record which was not disclosed to Edwards. This information impacted Wutke's credibility. (Ex. J, C. 29)

16.) The Chilton County Jail had no law library. (Ex. J, C. 29)

17.) Edwards received a disproportionate sentence and did not receive incentive time. (Ex. J, C. 30)

25. Edwards filed a motion to amend his petition in March 2004, where he argued:

> 1.) His conviction on 30 counts of possessing obscene material of a child under the age of 17 violated his double jeopardy rights, citing Girard v. State, 883 So. 2d 714 (Ala. Crim. App. 2002). (Ex. J, C. 40) This argument was also made in a state writ of habeas corpus filed on July 7, 2004. (Ex. J, C. 45)

> 2.) The material he possessed was not pornography and the ages of the victims in the photographs had not been established. (Ex. J, C. 40-42)

26. Edwards filed another amendment to his Rule 32 petition on July 7, 2004, where he reiterated many of his previously raised arguments. (Ex. J, C. 46-54) The State filed a motion to dismiss the petition on August 3, 2004. (Ex. J, C. 55-56) The State argued that the issues raised by Edwards could have been raised at trial and on direct appeal, but were not. (Ex. J, C. 55-56) It also argued that Edwards's claims were not specific. (Ex. J, C. 55) Further, the court had jurisdiction to convict and sentence Edwards "and nothing offered in his [p]etition amounts to improper [c]ourt jurisdiction, which would entitle him to a new sentencing hearing or trial." (Ex. J, C. 56) The State also argued that Edwards was sentenced within the sentencing guidelines. (Ex. J, C. 56) Finally, the State

argued that Edwards has not offered any facts that amount to newly discovered evidence. (Ex. J, C. 56)

27. Edwards filed an additional amendment to his petition on August 9, 2004. In this petition, he parroted the claims he had previously raised. (Ex. J, C. 57-70) The only additional claim that can be ascertained by the State is that his appellate attorney was ineffective for failing to give him copies of his court transcripts (Ex. J, C. 64-65), and did not request pre-trial transcripts. (Ex. J, C. 68)

28. A hearing on the Rule 32 petition and the amendments was also held on August 9, 2004. (Ex. J, R. 2-9) Edwards raised the following issues at the hearing:

1.) The police illegally searched his home and computer. (Ex. J, R. 4-5)

2.) His right to be free from double jeopardy was violated because the conviction on 30 counts of possessing obscene material should have been treated as one count. (Ex. J, R. 5)

3.) His Fifth and Sixth Amendment Rights were violated for various reasons "on different things". (Ex. J, R. 6)

4.) "[V]ideotapes were not sworn in at the time they were taken through the DA. It's in the fourth amendment ... The interviews of the children that were presented at trial ... The video was a violation of the (inaudible) clause, fourth and fifth amendment." (Ex. J, R. 5-6)

5.) The court prevented Edwards from making a tape recording of the court proceedings. (Ex. J, R. 6-7)

29. Judge Reynolds specifically countered Edwards's fourth claim concerning a video tape by stating that the children testified live in open court. (Ex. J, R. 6) The State also argued that the issues raised by Edwards could have been raised at trial. (Ex. J, R. 7) The State also argued that the court had informed Edwards of his right to counsel, but Edwards chose to represent himself. (Ex. J, R. 7) The court, however, appointed a legal advisor to assist him. (Ex. J, R. 7) Edwards also understood his rights concerning taking the witness stand, chose to take the stand, and admitted "his involvement with two young boys." (Ex. J, R. 8) Edwards also admitted to giving pornography to a co-worker, and admitted to what the pornographic pictures depicted. (Ex. J, R. 8)

30. Judge Reynolds issued an order on August 26, 2004 that read:

1. That the Defendant presented himself for trial on one count of Production of Obscene material, two counts of Sexual Abuse 1st, and thirty counts of Possession of Obscene Material and has been found guilty of all thirty-three counts.

2. The Defendant appealed his convictions and the same were affirmed.

3. That the Defendant was in possession of ... several images of children under the age of 17 years and the same should have been one count of Possession of Obscene Material.

Therefore it is ORDERED, that the convictions for possession of Obscene Material in Counts 5-33 are set aside and the Sentencing

Order be amended to reflect the following: Count One-Production of
Obscene Material, 10 Years, Count Two and Count Three-Sexual
Abuse 1st, 10 years cs [consecutive] to each other, Count Four,
Possession of Obscene Material, 10 years.  The sentences shall run
concurrent on Counts One, Two, and Four and the sentence for Count
Three shall be consecutive to Counts One, Two, and Four.

(Ex. J, C. 71)  Edwards filed a timely notice of appeal on September 21, 2004.

(Ex. J, C. 72)

### 2)    Appeal From the Denial
### of the Post-Conviction Petition

31. As best the State can ascertain, Edwards raised the following

issues on appeal:

1.) His Constitutional and Civil Rights were violated, including

his Eighth Amendment Rights, because he is a nudist and bi-sexual

(Ex. K, p. 7-8);

2.) his appellate attorney was ineffective because she failed to

ensure that the appellate record was complete (Ex. K, p. 9, 15); his

appellate attorney failed to do her job, and he was forced to accept her

service because the jail did not provide access to a law library (Ex. K,

p. 23);

3.) the judge improperly told Edwards at the hearing on the

Rule 32 petition that, before he could file an appeal, the Court would

have to rule against him (Ex. K, p. 10-13);

4.) the State failed to prove the ages of the victims in the pornography (Ex. K, p. 13-14, 23-24);

5.) Edwards's second amendment to his Rule 32 petition was not included in the record on appeal (Ex. K, p. 15-17);

6.) the Confrontation Clause was violated because at the Rule 32 hearing the court reporter indicated that some dialogue by Edwards was inaudible (Ex. K, p. 17);

7.) videotaped interviews presented by the State during trial were allegedly not disclosed to Edwards (Ex. K, p. 17);

8.) comments apparently made to Edwards at the Rule 32 hearing by an attorney named Robert Bowers, Jr. were not included in the record (Ex. K, p. 17);

9.) it was not disclosed to Edwards that, following his trial, Donald Wutke, was convicted of sodomy and sexual abuse and received eight years in prison, including good-time credits, in exchange for the testimony he gave against Edwards (Ex. K, p. 17-18);

10.) his trial was a prejudicial proceeding because it "join[ed] non-criminal activities such as nudes (nudist) with any sex crimes..." (Ex. K, p. 19);

24

11.) parents who abuse their children get away with their crime; prisoners who were abused children become abused in prison, and Edwards seeks to protect these people. (Ex. K, p. 19-20);

12.) The procedural bars of Rule 32.2 of the Alabama Rules of Criminal Procedure should not apply to Edwards because he is unlearned in the law. (Ex. K, p. 21-22).

32. After the State filed its brief in response to Edwards's appellate claims (Ex. L), the Alabama Court issued its memorandum opinion on August 5, 2005. (Ex. M) The court agreed with the State that many of the arguments, initially raised in his petition and amendments, were waived because Edwards "fail[ed] to raise them or present supporting evidence for them at the hearing on the Rule 32 petition." (Ex. M, p. 2)

33. The court determined that Edwards raised the following issues at the Rule 32 hearing:

1.) The police illegally searched his computer.

2.) His right against double jeopardy was violated because the conviction for thirty counts of possession of obscene material should have been treated as one count.

3.) His Fifth and Sixth amendment rights were violated "on different things".

4.) "[V]ideotapes were not sworn in at the time they were taken through the DA. It's in the fourth amendment... The interviews of the children that were presented at trial

... The video was a violation of the (inaudible) clause, fourth and fifth amendment."

5.) The Court kept [Edwards] from making a tape recording of the court proceedings.

(Ex. M, p. 3)

34. The court then listed Edwards's appellate issues that, which is comparable (including the numbering of the issues) to the Respondents' recitation above. (Ex. M, p. 3-4) The court concluded that issues one and five from his Rule 32 hearing were not preserved for appellate review, because Edwards's failed to raise them in his appellate brief. (Ex. M, p. 4) Issue two, from the hearing, was "too vague to preserve anything for review." (Ex. M, p. 4) The trial court granted Edwards relief on issue three; consequently, the issue was moot. (Ex. M, p. 4) Issue four from the hearing, concerning the videotapes, appeared to have been raised on appeal; "[h]owever, this claim is precluded by Rule 32.2(a)(3) and (5) [of the Alabama Rules of Criminal Procedure] because it could have been objected to at trial when the videotapes were introduced, and it could have been raised on appeal, but was not." (Ex. M, p. 5) Finally it concluded that "[i]ssues 1, 2, 4, 9, and 10 on appeal were not properly preserved for appellate review because [Edwards] did not present them at the Rule 32 hearing. ... [Appellate] issues 3, 5, 6, 11, and 12 were never presented to the trial court and are not properly before this Court." (Ex. M, p. 5)

35. Edwards failed to file an application for rehearing in the Alabama Court of Criminal Appeals, and did not petition the Supreme Court of Alabama for certiorari review. The Court of Criminal Appeals issued the certificate of judgment, affirming the denial of the Rule 32 petition on August 24, 2005. (Ex. N)

## D.    Federal Habeas Corpus Petition

36. Edwards filed his federal habeas corpus petition on February 24, 2006. (Court's Order, p. 1)

### Exhaustion

37. To reiterate, Edwards raised the following claims in his federal habeas corpus petition.

> a. The search was illegal because it listed the wrong individual on the warrant, with an apparently different social security number than Edwards. (Edwards's pet., p. 5) "Search was made by the use of priors of other person that was not me. All warrants were for Robert Scott Edwards 212 62 6138[.] Later changed while in custody or waiting tr[ia]l to Robert Rex Edwards 420 86-5715, but they messed up and did not cover up completely[.]" (Edwards's pet., p. 5) The search was also illegal because he never received a property receipt and never received certain items back. (Edwards's

pet., p. 5) Further, the police broke into his car and stole his

briefcase when he came to court, and he never received a property

receipt for the briefcase or its contents.

> Never got  property receipt for all stolen
> from my home (CV-01-214) [A state
> forfeiture case, see Ex. **[NAME]**.]  None
> returned to me to include my business nic-
> nac grafts & gifts.  On June 28, 2002[,] the
> cops broke into my car and stole my
> briefcase that I took to court.  They forced
> the lock.  Inside was books and pictures
> from stores and libraries.  No receipt given.

(Edwards's pet., p. 5)

b. The arrest warrants were faulty for the same reasons as listed in

ground "A."  (Edwards's pet., p. 5)  Further, Edwards was

> [r]earrested and held for 11 days without
> seeing a judge or attorney. 30 counts later
> (2 ½ years) got 29 of the 30 set aside.  Judge
> Hardesty said she was never informed by the
> sheriff that I was in the jail.  A common
> practice of the law in Chilton County,
> Alabama.  All arrests warrants were issued
> after I was arrested not presented at my
> home June 22, 2001.

(Edwards's pet., p. 5)

c. Edwards's statement was coerced because "statements made while

handcuffed not of free will."  (Edwards's pet., p. 5)  "Due to the

known history of beating by law enforcement -- statement written

28

by Lt. James 'Jay' Edwards not the accused.  Later statement

written by the accused not Maranda used to notify of rights.  Was

told I could go home if I wrote a statement."  (Edwards's pet., p. 5)

d. The State violated discovery principles under <u>Brady v. Maryland</u>,

and also violated the Confrontation Clause.  (Edwards's pet., p. 7)

> Even when the judge granted discovery[,]
> the DA would not abide by it.  They said I
> had no right to what I own.  Not even
> copies.  I never got to review the videos
> (Confrontation Clause) or to interview any
> witnesses against me to prove false
> statements.  However, State Witnes[s]
> Wulke was later convicted and found out the
> deal with the DA.  Wulke also had prior
> felony not disclosed to the jury either nor
> [the] deal to reduce the sodomy charges[.]

(Edwards's pet., p. 7)

e. The principles of Double Jeopardy were violated.  "Ground- Double

Jeopardy.  Proven on Counts 4-33 which made 5-33 set aside

illegal arrest on June 22, 2001 and held for 11 days in jail without

bond, attorney or hearing.  Counts 2-3 are also Double Jeopardy

involving more than 1 person at the same time[.]"  (Edwards's pet.,

p. 9)

f. The petit and grand juries were unconstitutional.  Edwards's claim

appears to be that the possession of child pornography would

criminalize nude pictures of children taken by their parents to show the growth of the child. Further, the pictures he had were not lewd, but were mere nude pictures. Also, he "knew a couple of the jurors in school and they did take pictures of themselves and their girlfriends under 17. In fact it was a video he made." (Edwards's pet. p. 9)

g. He received ineffective assistance of counsel.

> I had trouble with attorneys Boggs had me
> bring pictures I found in libraries and in
> books of nude subjects (children) and never
> presented them or gave them back to me.
> On Dec. 10, 2001 I was told by Hayes that
> they cannot be my attorney unless I gave her
> $4,000.00. I only had $12.00

(Edwards's pet, p. 11)

> Karn was appointed and I fired him based on
> our conversation in his office in 2001.
> [Judge] Reynolds reappointed him 2 more
> times. Finally on the day of my jury
> selection[,] Reynolds made him my legal
> advisor. He never said a word which
> continued on court day. Even the Alabama
> Assistance general made a note of Karn's
> silence. He also represented a family
> member of the plaintiff's party (conflict of
> interest)[.] He also knew that DHR had
> record of prior cases on the plaintiff[]s that
> he did not disclose to the court.

(Edwards's pet., p. 11)

> Huntley was appointed to do my direct
> appeal[,] but only on CC-01-244[.]  No one
> did CV-01-214 fruits of crime not
> Code/1975 § 13-12-198 by law.

(Edwards's pet. p. 11.  Note, the pages in his petition appear to

have been reversed, the following paragraph is page 10.)

> Huntley only used my pro-se against me
> nothing on the constitutional grounds I
> established in court.  She also did the same
> thing to Nichalos Turner[,] 854 So2d 162
> (Al[a.] Cr[im.] Ap[p.] 2003[.]  Turner was
> resentenced illegally again on the same
> indictment on Aug. 9, 2004.  Since [Judge]
> Reynolds had reversed my pro-se status I
> was not able to appeal case # CV-01-214
> and lost over $10,000 in software, books,
> and other thing[s].  Along with my business
> Nic-Nac Grafts and Gifts.  Lisenced
> February 2001.  A SMC Novilty Business
> by Internet and vending.  None of my
> convictions were challenged by Huntley and
> my pro-se status was affirmed 2 for and 1
> against.

(Edwards's pet., p. 10)

38. Edwards has failed to exhaust any of his federal habeas claims in the

Alabama courts, because he has failed to present the claims throughout the trial

and appellate courts.

> Because the exhaustion doctrine is designed to give the state courts a
> full and fair opportunity to resolve federal constitutional claims before
> those claims are presented to the federal courts, we conclude that state
> prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see Pruitt v. Jones, 348 F.3d 1355, 1359 (11th Cir. 2003) (holding that O'Sullivan applies to post-conviction remedies); Smith v. Jones, 256 F.3d 1135, 1140-41 (11th Cir. 2001) (requiring presentation of claims to the Supreme Court of Alabama for discretionary review to exhaust the claims under O'Sullivan).

39. Edwards failed to properly pursue his direct appeal, throughout the Alabama appellate courts. Furthermore, Edwards failed to appeal his state post-conviction claims, by failing to file an application for rehearing and a petition for certiorari review in the Supreme Court of Alabama challenging the denial of his Rule 32 petition.

**Procedural Default**

40. Edwards is procedurally defaulted from returning to state court to properly litigate his claims. Issues a., b., d., and f. are claims that could have been raised at trial, but were not. Therefore, Edwards would be barred from raising them in a state post-conviction petition under Rule 32.2(a)(3) of the Alabama Rules of Criminal Procedure because they could have been raised at trial, but were not. Issues a., b., c., d., and f. are issues that would be precluded by Rule 32.2(a)(5) because Edwards could have raised them on appeal, but failed to do so.

41. Issue c. is moot; to the extent that Edwards claims he was convicted and sentenced on 30 counts of possession of child pornography. He has already received relief on this issue -- the 30 counts were reduced to one count. (Ex. J., C. 71) To the extent, he challenges his incarceration in jail awaiting trial, this issue could have been raised at trial and on direct appeal, but was not. Therefore, Rules 32.2(a)(3) and (a)(5) would preclude review of this issue. Also, his issue that he could not be convicted of two acts of sexual, committed on two different victims, because they occurred at the same time is a non-jurisdictional Double Jeopardy issue that has never been raised in the state courts, and would be barred by Rules 32.2(a)(3) and (a)(5) of the Alabama Rules of Criminal Procedure.[4]

42. Issue g. -- the ineffective assistance of counsel claims -- were properly raised in the Rule 32 petition. Edwards, however, failed to raise these issues, throughout the Alabama appellate courts, and would now be procedurally barred from doing so. Rule 40(c) of the Alabama Rules of Appellate Procedure requires that the application for rehearing within 14 days from the issuance of the opinion. Rule 39(c)(1) of the Alabama Rules of Appellate Procedure requires that an application for rehearing be filed for the Supreme Court of Alabama to consider

---

[4] Also, the convictions do not constitute Double Jeopardy, because the two acts, committed on two different victims, represent distinct and separate acts, containing different elements --namely the identity of the victim, and, therefore, does not meet the definition for Double Jeopardy under Blockburger v. United States, 284 U.S. 299, 304 (1932).

certiorari review. Issues a., b., c., d., e., and f also cannot be raised before the Alabama appellate courts for the same reason.

43. Edwards's habeas claims would also be precluded from being raised in the state court in a post-conviction petition under Rules 32.2(b) and 32.2(c) of the Alabama Rules of Criminal Procedure. Rule 32.2(b) bars successive petitions, and Rule 32.2(c) bars untimely petitions filed outside the one-year limitations period. Edwards's conviction became final on direct appeal, on June 17, 2003; therefore, Edwards would be barred from raising his claims in another post-conviction petition because the limitations period ended on June 17, 2004. Rule 32.2(d) also precluded ineffective assistance of counsel claims from being raised in a successive petition.

44. This Court should not review Edwards's habeas claims because he failed to raise them throughout the Alabama courts. "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." Coleman v. Thompson, 501 U.S. 722, 732 (1992). "[T]he federal court may foreclose [his] filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal." Bailey, 172 F.3d at 1302-03.

> There is no dispute that this state court remedy . . . is no longer available to [Edwards]; the time for [pursuing such claims] has long

passed ... Thus, [Edwards's] failure to present [these] federal habeas
claims to the [Alabama courts] in a timely fashion has resulted in a
procedural default of those claims.

O'Sullivan, 526 U.S. at 848.

45. The only way Edwards may overcome his procedural default to allow

federal habeas review of his claims is to either demonstrate cause and actual

prejudice to excuse the default or prove a fundamental miscarriage of justice

requires review of his claims. See Coleman, 501 U.S. at 750; Smith, 256 F.3d at

1138. Edwards has not provided evidence to support either remedy for default.

Edwards has not explained why his habeas issues could not have been raised at

trial and throughout the Alabama appellate courts.   Further, he has not shown any

fundamental miscarriage of justice would arise from failure to review these claims

-- he has not alleged or proved that he is actually innocent of the crimes. See

Schlup v. Delo, 513 U.S. 298, 324 (1995).

**D. Federal Statute of Limitation**

46. Title 28 U.S.C. § 2244(d)(1) applies a one-year statute of limitation to an

application for a writ of habeas corpus to an individual incarcerated pursuant to a

state court judgment.

> (d)(1) A 1-year period of limitation shall apply to an application for a
> writ of habeas corpus by a person in custody pursuant to the judgment
> of a State court.  The limitation period shall run from the latest of-
>> (A)the date on which the judgment became final by the
>> conclusion of direct review or the expiration of the time for
>> seeking such review;

      (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

      (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,

      (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

47. The legislation enacting the one-year statute of limitation applicable to federal habeas corpus petitions became effective on April 24, 1996. See Carey v. Saffold, 536 U.S. 214, 217 (2002) (noting the effective date of the federal limitation period); Drew v. Dept. of Corr., 297 F.3d 1278, 1282 (11th Cir. 2002) (same). In cases where the conviction is obtained following the one-year period, the defendant has one year from the date on which his conviction becomes final to mount a federal challenge. Title 28 U.S.C. § 2244(d)(1)(A).

48. Edwards's conviction became final on June 17, 2003. (Ex. E) Ninety-nine days elapsed between his conviction becoming final and the filing of his Rule 32 petition, on September 24, 2003. (Ex. J, C. 1) This tolled the time for filing his federal habeas corpus petition. Title 28 U.S.C. § 2244(d)(2).

49. The denial of his post-conviction petition became final on August 24, 2005. (Ex. N) One-hundred eight-four days elapsed between the denial of the petition and the filing of his federal habeas corpus petition. Therefore, his federal petition is timely because only a total of 283 days, with the tolling period, elapsed between his conviction becoming final and the filing of his federal petition.

Respectfully submitted,

Troy King
*Attorney General*

Jean-Paul M. Chappell
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify on this 17th day of April, 2006, I have served a copy of the

foregoing Edwards (including exhibits), by placing said copy in the United States

mail, first class, postage prepaid, and addressed as follows:

> Robert Rex Edwards
> AIS #225984
> Pine Prairie Correctional Center
> 1133 Hampton Dupre Road
> P. O. Box 650
> Pine Prairie, LA 70576

> Jean-Paul M. Chappell
> Assistant Attorney General
> CHA073

ADDRESS OF COUNSEL:
Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7300

120646