No. CR-01-2180

=====================================

*In the COURT of CRIMINAL APPEALS*

*of ALABAMA*

———————————◆———————————

ROBERT REX EDWARDS ,

Appellant,

v.

STATE OF ALABAMA,

Appellee.

———————————◆———————————

*On Appeal From the Circuit Court*
*of Chilton County (CC-01-244)*

=====================================

**BRIEF OF APPELLEE**

William H. Pryor Jr.
*Attorney General*

J. Thomas Leverette
*Deputy Solicitor General*

Jean-Paul M. Chappell
*Assistant Attorney General*
Counsel of Record *

State of Alabama
Office of the Attorney General
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7401, 242-7300*

January 23, 2003

EXHIBIT

C

G. Evidence of Coercion ............................. 26

H. Evidence of Manipulation .......................... 27

CONCLUSION............................................. 29

CERTIFICATE OF SERVICE................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. State*, 488 So. 2d 41 (Ala. Crim. App. 1986). 22

*Faretta v. California*, 422 U.S. 806 (1975)............... 15

*Fitzpatrick v. Wainwright*, 800 F. 2d 1057 (11th
  Cir. 1986)............................................ 22

*Godinez v. Moran*, 509 U.S. 389 (1993).................... 20

*Johnson v. State*, 716 So. 2d 745 (Ala. Crim. App. 1997).. 16

*Sibley v. State*, 775 So. 2d 235 (Ala. Crim. App. 1998)... 19

*Strozier v. Newsome*, 871 F. 2d 995 (11th Cir. 1991)...... 19

*Teske v. State*, 507 So. 2d 569 (Ala. Crim. App. 1987).... 17

*Tomlin v. State*, 601 So. 2d 124 (Ala. 1991)............. 16

## STATEMENT OF THE CASE

Robert Rex Edwards is appealing his multiple
convictions from the Chilton County Circuit Court.  The
Honorable Sidney Reynolds presided over this case.  The
sole issue on appeal is whether Edwards knowingly and
intelligently waived his right to counsel.

Edwards was indicted on August 10, 2001, with one count
of production of obscene matter involving a person under
17, two counts of first degree sexual abuse involving a
child under 12, and 30 counts of possession of obscene
matter involving a child under 17.  (C. 103-111)  Edwards
was granted indigence status at trial.  (C. 198)  William
P. Boggs filed a notice of appearance as Edwards's counsel
on August 23, 2001.  (C. 112)  A motion to suppress
Edwards's statements to the police on August 23, 2001.  A
suppression hearing was held on December 10, 2001, and the
motion was denied.  (C. 2)  Edwards waived arraignment and
pleaded not guilty on August 26, 2001.  (C. 120)  A motion
for a mental evaluation of Edwards was filed.  (C. 116-117)
The court granted the motion and ordered an evaluation.
(C. 122-125)  The report was filed on November 15, 2001.
(C. 2)  The report is not included in the record; however,

1

there is nothing to indicate that Edwards was determined incompetent.

William P. Boggs and Amy Hayes (another attorney in Boggs's firm) filed a motion to withdraw as counsel on December 11, 2001, citing Edwards's lack of cooperation. (C. 126)  The motion was granted on January 7, 2002.  (C. 2)  Edwards filed a motion on January 16, 2002, requesting the right to represent himself.  (C. 127)  He also filed various discovery motions and other motions.  (C. 128-136) On April 1, 2002, the trial court granted Edwards's motion to represent himself, but appointed David Karn to act as standby counsel to assist in the defense.  (C. 3)  Edwards filed a motion to withdraw Karn as legal advisor on April 19, 2002.  (C. 134)  It does not appear that this motion was ever expressly ruled on.

A jury was selected on June 24, 2002, with the defendant present accompanied by David Karn as legal advisor.  (C. 3)  The trial began on June 28, 2002.  (Id.) Following the testimony, the jury convicted Edwards on all counts.  (C. 3-6, 138-139, 141-155)  Edwards was sentenced on July, 29, 2002, to ten years in prison on each of the sexual abuse charges.  (C. 194, 237)  These sentences were

ordered to run consecutively. (Id.) He was also ordered to serve ten years each on the remaining charges; these sentences were ordered to run concurrently with the sentences imposed on the sexual abuse charges. (Id.) Edwards was also ordered to pay various fines, assessments, and court costs. (Id.)

Edwards filed a timely notice of appeal on August 2, 2002. (C. 197)

## ISSUE PRESENTED FOR REVIEW

Did Edwards fail to meet his burden of proof that he did not knowingly and intelligently waive his right to counsel where the record clearly shows that he made a request to represent himself?

## STATEMENT OF THE FACTS

The sole issue on appeal is whether Edwards knowingly and voluntarily waived his right to counsel. Edwards filed a motion requesting that he be allowed to represent himself on January 16, 2002. (C. 127) His appointed counsel had moved to withdraw on December 11, 2001, citing Edwards's lack of cooperation (C. 126); the motion was granted on January 7, 2002. (C. 2) Edwards's motion read, "MOTION FOR MYSELF TO ACT AS MY ATTORNEY[.] THIS IS TO INFORM THE COURT THAT I ROBERT REX EDWARDS IS PLANNING TO ACT AS MY OWN ATTORNEY. TO GET TO THE TRUTH." (C. 127) The motion was granted on April 1, 2002, but the court appointed David Karn to act as standby counsel, to assist Edwards in his defense. (C. 3) There is no transcript of these proceedings in the record. Edwards filed a motion on April 19, 2002, requesting that Karn be removed as his legal advisor. (C. 134)

The voir dire examination of the jury panel began on June 24, 2002. At the voir dire examination of the jury panel, Edwards asked if anyone on the panel had any prejudices against persons who are gay or bisexual. (R. 21)

The following proceedings took place outside the

presence of the jury on the day of trial, June 28, 2002,

before opening statements.

> MR. KARN: Your Honor, I would just like to
> clarify for the record that my role in this is to
> be an advisor to Mr. Edwards should he request it,
> but that I will not be having a particular active
> role in the trial of this matter. I just wanted
> it stated for the record that if Mr. Edwards does
> wish me to assist him in some way, then I will be
> glad to do that. The Court should also be aware
> that due to my involvement or lack of involvement
> in this case, I don't have much of a court file --
> a case file. Consequently, the particulars of
> this case are not with me due to the way that my
> appointment was made.

> THE COURT: Mr. Edwards, is that the way you
> would have it, you want it to be?

> MR. EDWARDS: Yes, sir.

> THE COURT: So you understand that in the event
> that you want some assistance, Mr. Karn is here
> available for you?

> THE DEFENDANT: Yes, sir.

(R. 24-25)

Donald J. Wutke was Edwards's employer at Domino's

Pizza where Edwards worked. He testified that Edwards

would discuss the children that lived at Edwards's trailer

park where he lived. Edwards knew everything about the

children, such as what they looked like, what clothing they

wore, and how old they were.  Edwards also knew when the

parents were home.  On one occasion, Edwards was

reprimanded with a written warning for exposing himself to

another employee.  (R. 38-40)

On or around April 5, 2001, Edwards passed out several

computer disks at work and gave one to Wutke.  When Wutke

took the disk home and placed it in his computer, he

discovered that there were child pornography images on the

disk.  He surmised that the ages of the children were

between the ages of four and fourteen.  He immediately

removed the disk and called the sheriff's department.  He

gave a written statement to the police that stated Edwards

asked him if he would like some computer disks, and Wutke

answered yes.  The disk contained child pornography.  Wutke

did not look at the other disk.  Edwards told Wutke that he

knew about the children in his trailer park and what age

they were.  Edwards also knew when their parents were home.

(R. 40-44)  Wutke believed Edwards to be approximately 47

years old.  (R. 44)  On cross-examination, Wutke admitted

that the date might not have been April 5, 2001, but that

he was positive Edwards gave the disk to him, and it

contained child pornography.  (R. 46)

Angela Bryant, mother of Joshua and Travis Bryant, and her children were neighbors of Edwards. (R. 51, 55) The children became acquainted with Edwards and play over in his yard. (R. 52-55) After some time, once she felt comfortable with Edwards, the children were allowed to go inside Edwards's trailer and they would play on his computer. (R. 56) One night, she allowed them to spend the evening over at Edwards's trailer. (Id.) The next morning, Joshua was very quiet and acting strange. (R. 56-57) Joshua told her that Edwards touched him while he spent the night. (R. 57) She also discovered her son was looking at nude pictures of other boys at Edwards's home. (Id.) Steven, a friend of Joshua's, also spent the night with Edwards. (R. 57) Joshua was 11, or almost 11, at the time, and Travis was just turning nine or ten. (R. 56)

Joshua Bryant testified that Edwards taught him how to use computers and he would play games on them. (R. 71-73) Edwards also showed Joshua pictures on the computer of nude boys in various sexual positions. (R. 74) The night that Joshua stayed over, Steven and he stayed up late and played computer games and watched television. (R. 74) Edwards showed them some pictures on the computer. The pictures

were of nude men, women, and children.  (R. 78)  Steven and
Joshua also played with condoms that they found on top of
Edwards's computer.  (R. 75)  Edwards was aware that they
were playing with the condoms.  (R. 76)  That evening after
Joshua had gone to sleep, he awoke to Edwards touching his
penis with his hands.  (R. 75)  Joshua was 11 years old at
the time of the incident.  (R. 77)  The incident occurred
approximately a week before May 7, 2001.  (R. 76)

Joshua gave a signed and written statement to the
police on May 7, 2001.  (R. 76)  The statement read that
Edwards had been touching Joshua "in my privates and
looking and groping it."  (R. 78)  This had been occurring
for two months.  (Id.)  Joshua told Edwards to stop, but he
would not.  (Id.)  Edwards told Joshua that Joshua "gave
him a hard on and that [Edwards] is bisexual and that he
want to blow me."  (Id.)  Edwards told Joshua that if he
ever wanted Edwards "to do it he would."  (Id.)  Edwards
showed "his privates" to Joshua.  (Id.)  He also showed him
"dirty pictures" of "woman, children, and guys".  (Id.)

Stephen Kidd, Joshua's friend, testified that he stayed
at Edwards's home by himself the night before Joshua stayed
over and the following night with Joshua.  (R. 89-90)  That

night Edwards touched Steven on his penis with his hand.
(R. 90-91)  Steven told Edwards not to, but "he kept coming
over to me."  (R. 90)  According to his statement, Edwards
touched him five times, and then continued several more
times.  (R. 93)  Steven had not planned on spending the
night the following evening, but Joshua was going to stay
over there.  (R. 90)  That evening Edwards touched both
Joshua and Steven.  (R. 93-94)  The boys told him to stop,
but he did not.  (R. 94)  He followed them into the
computer room and continued to touch them.  (Id.)  Steven
was ten at the time of the abuse.  (R. 93)

Gary Graves, a computer forensics officer (R. 125),
testified that Edwards had thousands of pornographic images
on his computer.  (R. 157)  The authorities believed there
were 50-60 images of child pornography, but they decided to
charge him only with possession of 30 images.  (R. 158)
The ages of the children in the pictures ranged in
estimation from nine to sixteen.  (R. 163-167)

Edwards made a statement on his own behalf.  He
testified that the evening that the boys stayed over Josh
and Steven were in the computer room.  (R. 185)  Josh said
that he had a "hard on".  (Id.)  Edwards walked over and

saw they were watching an adult movie on the computer.
(Id.)  They then began to masturbate.  (Id.)  Steve and
Josh then allegedly told Edwards that they were forced to
perform sexual acts on family members.  (R. 186)  According
to Edwards, "They were at it, stroking it."  (Id.)  Joshua
asked if Edwards would touch his penis, and Edwards did
while Joshua wore a condom.  (Id.)  On cross-examination,
he admitted to touching Joshua.  (R. 189)  He also admitted
that in some of the pictures he possessed, the girls
appeared to be under 17.  (R. 196, 200)  He argued,
however, that the web sites advertised that the models were
over 18, and there were many women who were older than what
they appeared to be.  (R. 196)

After Edwards's arrest the police Mirandized him.  (R.
107-108)  In the police car, Edwards told the officers he
had touched the two boys on their penis.  (R. 111)  In a
signed statement by Edwards, he admitted that Steven and
Joshua spent the night at his house.  (R. 112)  Edwards
showed them pornographic images.  (Id.)  The boys discussed
being sexually active.  (Id.)  Joshua, Steven, and Edwards
showed each other their penises.  (Id.)  Edwards "placed
his hand around each boys's penis and stroked it [...]

once." (Id.) The boys were wearing condoms with lotion. (Id.) The previous evening, Steven had spent the night, but according to Edwards, nothing happened except that Steven sat in his lap. (Id.) The statement was written by Lieutenant Edwards and signed by Robert R. Edwards as a true and accurate statement. (R. 112-13)

Edwards was again advised of his rights at the police station, and signed a form waiving those rights. (R. 114-15) He reiterated that the boys began watching adult movies, and placed condoms on their penis. (R. 118) The statement continues, "Josh wanted me to see how big his was so I touched him on his penis through the rubber." (R. 119) Steve told Edwards "he wanted to see if mine was bigger than his dad's, so I showed him mine." (Id.) The police concluded after investigation, that the allegations from Edwards of sexual abuse concerning the boys' parents were false. (R. 120)

## STANDARDS OF REVIEW

The standard of review for waiving the right to counsel at trial is that it must be knowingly and intelligently given.  *See Faretta v. California*, 422 U.S. 806, 835 (1975).  This Court should examine the totality of the circumstances.  *See Ex parte Tomlin*, 601 So. 2d 124, 129 (Ala. 1991)

## SUMMARY OF THE ARGUMENT

Edwards raises the sole issue for the first time on appeal that his waiver of counsel was not knowingly and intelligently given. He argues that record does not show that the trial court informed him of the dangers of representing himself, however, such a specific colloquy is not required by law. The record clearly shows that Edwards requested to represent himself; consequently, he has the burden of showing by a preponderance of the evidence that his waiver was not knowingly and intelligently given. Based on the totality of circumstances, including but not limited to, his age and education, the fact that he had counsel prior to trial, and no evidence that the waiver was coerced, Edwards has failed to meet this burden.

## ARGUMENT

**Edwards Failed To Meet His Burden Of Proof That He Did Not
Knowingly And Intelligently Waive His Right To Counsel
Where The Record Clearly Shows That He Made A Request To
Represent Himself.**

The sole issue on appeal is whether Edwards voluntarily
and knowingly waived his right to counsel. The issue is
being raised for the first time on appeal.

The United States Supreme Court, in *Faretta v.
California*, 422 U.S. 806 (1975), stated that a defendant
does have the right to self-representation, but that any
waiver of counsel must be given knowingly and
intelligently. *Id.* at 835. The record should establish
that the defendant "knows what he is doing and his choice
is made with eyes open." *Id.*

> Whether the burden is on the prosecution to
> prove that the waiver was made knowingly and
> intelligently or on the defendant to prove that he
> did not make a knowing and intelligent waiver
> depends upon "whether the record shows that [the]
> defendant has expressly waived his right to
> counsel.... If the record is not clear as to the
> defendant's waiver and request for self-
> representation, the burden of proof is upon the
> State." *Tomlin v. State*, 601 So.2d 124, 128
> (Ala.1991), *citing Carnley v. Cochran*, 369 U.S.
> 506, 516-517 [82 S.Ct. 884, 890-891, 8 L.Ed.2d 70]
> (1962).

*Johnson v. State*, 716 So. 2d 745, 748 (Ala. Crim. App.
1997).

It is clear in this case that the burden is on Edwards
to show that his waiver was not knowingly and intelligently
given because he expressly requested to represent himself.
Edwards's *pro se* motion read, ""MOTION FOR MYSELF TO ACT AS
MY ATTORNEY[.]  THIS IS TO INFORM THE COURT THAT I ROBERT
REX EDWARDS IS PLANNING TO ACT AS MY OWN ATTORNEY.  TO GET
TO THE TRUTH."  (C. 127)  Before the trial began, his
standby counsel stated that he was available if Edwards
requested assistance, but that he would not be trying the
case.  (R. 24)  When asked by the trial court if this was
how Edwards wanted the arrangement he responded, "Yes,
Sir."  (R. 25)

Edwards has the burden of proving by a preponderance of
the evidence that he did not knowingly and intelligently
waive his right to counsel.  *See Tomlin v. State*, 601 So.
2d 124, 128 (Ala. 1991)  Edwards, however, has waived the
opportunity to meet this burden of proof because he failed
to raise such a claim in a motion for new trial.

> Teske [Edwards] waived opportunity to meet his
> burden of proof, for it would have been
> procedurally appropriate for Teske [Edwards] to
> have raised the allegation of inadequate waiver in

16

adopted several factors to determine whether a waiver was knowingly and intelligently entered.  They are:

> (1) the background, experience and conduct of the defendant including his age, educational background, and his physical and mental health; (2) the extent to which the defendant had contact with lawyers prior to the trial; (3) the defendant's knowledge of the nature of the charges, the possible defenses, and the possible penalty; (4) the defendant's understanding of the rules of procedure, evidence and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which he aided the defendant; (7) whether the waiver of counsel was the result of mistreatment or coercion; or (8) whether the defendant was trying to manipulate the events of the trial.

*Strozier v. Newsome*, 871 F. 2d 995, 998 (11th Cir. 1991); *see also Sibley v. State*, 775 So. 2d 235, 239 (Ala. Crim. App. 1998).

## A. Education and Background

From information gleaned from his pre-sentence report, Edwards was 40 years old at the time he decided to waive his right to counsel.  (C. 191)  He had graduated from high school and attended ITT Technical School in 1995, but had to leave school for lack of money.  (Id.)  Edwards also served in the United States Air Force from 1980 to 1985 earning the rank of E-3 and received a general discharge.

(C. 192)  He also filed various motions (C. 127-136), while
arguably not artfully composed, show that he is "literate,
competent, and understanding". *Faretta*, 422 U.S. at 835.
There is nothing in the record to indicate that Edwards's
physical health impacted on his ability to knowingly and
intelligently waive his right to counsel.  There is also
the question of Edwards's mental health.  The trial court
did order Edwards to undergo a mental evaluation (C. 122-
125), and the report was issued on November 15, 2001.  (C.
2) There is nothing in the record to indicate that Edwards
was found incompetent, and the proceedings in this case
moved forward indicating that Edwards was found competent
to stand trial.  The standard of competency is the same for
proceeding to trial as it is for waiving counsel.  *See*
*Godinez v. Moran*, 509 U.S. 389, 396-97. (1993)  The
sentencing report did not indicate any history of mental
illness (C. 156-193), and stated "As far as can be
determined, there are no psychological reports on this
individual."  (C. 192)  Based on Edwards's maturity, his
background, his literacy, and the lack of any evidence of
physical or mental impairments in the record that would
impact on his ability to knowingly and intelligently waive

his right to counsel, this first factor favors the
conclusion that Edwards knowingly and voluntarily waived
his right to counsel.

## B. Representation From and Contact With Lawyers Prior to Trial

The second factor is "the extent to which the defendant
had contact with lawyers prior to the trial".  It appears
from the record that William Boggs became Edwards's
attorney as early as August 15, 2001.  (C. 1)  Boggs filed
a notice of appearance on August 23, 2001.  (C. 112)  He
filed a motion to withdraw on December 11, 2001.  (C. 126)
This motion was granted on January 7, 2002.  (C. 2)  David
Karn was appointed to act as Edwards's legal advisor on
April 1, 2002.  (C. 3)  Jury selection for the trial began
on June 24, 2002, and the trial began on June 28, 2002.
(C. 3)  It is clear that Edwards had counsel between August
2001 through January 2002, and had legal counsel available
to him as a legal advisor beginning April 1, 2002 and
continuing throughout the trial.  "Another factor courts
consider in determining whether the risks of a pro se
defense are understood is whether a defendant is

represented by counsel before trial." *Fitzpatrick v.*
*Wainwright*, 800 F. 2d 1057, 1066 (11th Cir. 1986)  The fact
that Edwards was represented by Boggs for almost three
months before Boggs filed a motion to withdraw, and had
David Karn available to him as a legal advisor for
approximately three months before the trial began supports
the conclusion that Edwards knowingly and intelligently
waived his right to counsel.

**C. Knowledge of the Charges, Possible Defenses, and
Possible Penalties.**

   The third factor is "the defendant's knowledge of the
nature of the charges, the possible defenses, and the
possible penalty". *Strozier*, 871 F. 2d at 998.  Edwards
waived his right to an arraignment and pleaded not guilty
on August 26, 2001.  (C. 120) "When a defendant waives the
reading of an indictment at his arraignment, he is
nonetheless charged with knowledge of its contents."
*Alexander v. State*, 488 So. 2d 41, 44 (Ala. Crim. App.
1986)  On the waiver form signed by Edwards it also states,
"I further state that I have been informed of the charges
against me."  (Id.)  Edwards, therefore, knew about the
charges against him.  The record, however, does not

indicate that before waiving his right to counsel, Edwards
had been made aware of the possible defenses to the charges
or the punishment he faced.

There is some indication based on Edwards's performance
at trial that he was aware of the possible defenses to the
charges he faced.  For instance, during the cross-
examination of Donald Wutke, Edwards questioned Wutke on
whether the disk he gave him actually contained adult
pornography and not child pornography.  (R. 46)  It also
appears that Edwards was attempting to raise
inconsistencies in Joshua's and Steven's testimonies in an
attempt to defend himself against the sexual abuse charges.
R. 81-83, 98-100)  Finally, on the possession of child
pornography charges, Edwards raised the issue that although
the children may appear young, they were over the age of
17.  (R. 172, 195-196)

There are therefore some factors from this third
criterion that point towards Edwards knowingly and
intelligently waiving his right to counsel.  He was
informed of the charges, and appears to have had some
knowledge of possible defenses to the crimes.  There is
however, nothing in the record that indicates he was

23

expressly informed of possible defenses nor is there
anything from the record that shows he was aware of the
possible sentences.  These factors would tend to show that
Edwards did not knowingly and intelligently waive his right
to counsel.

### D.  Knowledge of the Rules of Procedure, Evidence, and Courtroom Decorum

There is evidence showing that Edwards had some
knowledge of criminal procedure.  He filed various pretrial
motions on his own behalf including a motion waiving
counsel and requesting that he be allowed to represent
himself (C. 127) and discovery motions. (C. 129-131, 136)
He also questioned the jury panel during voir dire as to
their prejudices; he asked whether any of them had any
prejudices against persons who are gay or bisexual.  (R.
21-22)  This could be considered an appropriate question in
the context of this case.  Edwards conducted cross-
examination and, in general attempted to raise
inconsistencies in the testimonies of the State's
witnesses.

There is also evidence that Edwards was unfamiliar with
courtroom procedure.  He attempted to make a statement

24

during voir dire. (R. 21) He requested to call another witness at a later date during the cross-examination of a witness. (R. 45) He also made statements during the questioning of witnesses (R. 46, 47, 48, 61, 81, 174) and had to be reminded to question the witnesses only on relevant matters. (R. 61, 97, 174)

This fourth factor has conflicting evidence as to whether Edwards understood criminal procedure. There is evidence that Edwards generally understood the procedures in that he questioned witnesses and acted appropriately during the trial. Edwards, however, had difficulty in asking relevant questions and refraining from making statements during cross-examination. Due to the conflicting evidence, this factor does not conclusively weigh in favor of or against the conclusion that Edwards did not knowingly and voluntarily waive his right to counsel.

## E. Experience in Criminal Trials

This conviction was Edwards's first felony conviction. (R. 235) There is nothing in the record to indicate that Edwards had ever been involved in a criminal trial before this case was tried. This factor weighs in favor of the

conclusion that Edwards waiver was not knowingly and
intelligently entered.

## F. Standby Counsel

Edwards was appointed standby counsel on April 1, 2002,
to aid Edwards should he request it. (C. 3) Edwards
acknowledged that he understood this arrangement at the
beginning of trial and that it was the arrangement he
wanted. (R. 25) David Karn, his standby counsel, did not
participate during the trial. It is unclear what aid he
gave Edwards. Karn, however, was available to Edwards
should he request it beginning in April 2002. Trial did
not begin until June 2002. Although, Edwards filed a
motion asking for the withdrawal of Karn on April 19, 2002
(C. 134), this motion was never granted. Therefore, Karn
was still Edwards's standby counsel. The fact that Edwards
had standby counsel appointed three months before trial
began weighs in favor of the conclusion that Edwards
knowingly and intelligently waive his right to counsel.

## G. Evidence of Coercion

There is no evidence that Edwards was coerced into
waiving counsel or that it was the result of mistreatment.

This factor supports the conclusion that Edwards knowingly and voluntarily waived his right to counsel

## H. Evidence of Manipulation

There is no evidence that Edwards was trying to manipulate the events at trial or delay the proceedings. This type of evidence tends to show that a defendant understands criminal trial proceedings. *See Fitzpatrick*, 800 F. 2d at 1067. This factor weighs in favor of the conclusion that the waiver of counsel was not knowingly and intelligently given.

## Edwards Knowingly and Intelligently Waived His Right to Counsel

The Court should examine the totality of circumstances in determining whether Edwards knowingly and intelligently waived his right to counsel. *See Tomlin*, 601 So. 2d at 129. Factors one, two, six, and seven support the conclusion that Edwards knowingly and intelligently waived his right to counsel. There is evidence in the record concerning factors three and four that supports the conclusion that the waiver was knowing and intelligent. Other evidence supports the opposite conclusion. Only factors five and eight support the conclusion that

27

Edwards's waiver of counsel was not knowingly and intelligently entered. It is clear from the record that Edwards requested to represent himself. (C. 127) (R. 24-25) The burden is on Edwards to show that the plea was not knowingly and intelligently given by a preponderance of the evidence. *See Johnson*, 716 So. 2d at 748. He has not met this burden.

## CONCLUSION

Based on the above reasons, this Court should affirm the conviction.

Respectfully submitted,

William H. Pryor Jr.
*Attorney General*

J. Thomas Leverette
*Deputy Solicitor General*

Jean-Paul M. Chappell
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify on this 23rd day of January, 2003, I have served a copy of the foregoing on the attorney for Appellant, by placing said copy in the United States mail, first class, postage prepaid, and addressed as follows:

        Hon. Elizabeth H. Huntley
        P. O. Box 1545
        Clanton, AL  35042


                        Jean-Paul M. Chappell
                        Assistant Attorney General
                        CHA073

ADDRESS OF COUNSEL:
Office of the Attorney General
Criminal Appeals Division
Alabama State House
11 South Union Street
Montgomery, Alabama  36130
(334) 242-7300


88308/43603-001