43603
Chappell

# Court of Criminal Appeals
State of Alabama
Judicial Building, 300 Dexter Avenue
P. O. Box 301555
Montgomery, AL 36130-1555

MAY 30 2003

H.W. "BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges



RELEASED
MAY 30 2003
CLERK
ALA COURT CRIMINAL APPEALS

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

MEMORANDUM

CR-01-2180                        Chilton Circuit Court CC-01-244

R.R.E. v. State of Alabama

SHAW, Judge.

The appellant, R.R.E., was convicted of one count of production of obscene matter containing a visual reproduction of a person under the age of 17 involved in obscene acts, a violation of § 13A-12-197, Ala. Code 1975, two counts of first-degree sexual abuse of a person under the age of 12, violations of § 13A-6-66(a)(3), Ala. Code 1975, and 30 counts of possession of obscene material containing a visual reproduction of a person under the age of 17 involved in obscene acts, violations of § 13A-12-192(b), Ala. Code 1975. He was sentenced to 10 years' imprisonment for each conviction; the sentences for the two convictions of sexual abuse were ordered to run consecutively and the remaining sentences were ordered to run concurrently.

The evidence adduced at trial indicated the following: the appellant gave D.W., a co-worker, a computer disk. D.W. took the disk home and viewed the contents on his computer; D.W. discovered that the disk contained images of child


EXHIBIT D

pornography and notified the sheriff's department. The images on the disk were later determined to contain child pornography.

The evidence also indicated that 9-year-old J.B. and his friend S.K., spent the night with the appellant, who was approximately 40 years of age; that the appellant and the minors viewed pornographic material on the appellant's computer; and that the appellant touched or stroked each child's penis. Gary Graves, a computer forensics officer, testified that the appellant had thousands of pornographic images on his computer and that 50-60 of those images appeared to contain child pornography.

The appellant admitted that the minors spent the night at his residence and he admitted to touching J.B.'s penis. He stated that it was his belief that the people in the images in his computer were over 18 years of age.

The sole issue the appellant argues on appeal is that his waiver of counsel was not knowingly and intelligently entered. Specifically, the appellant contends that the trial court never conducted a Faretta[1] hearing or advised him of the dangers of self-representation.

The appellant was granted indigency status for the purposes of trial. On August 15, 2001, the day that the case was assigned to the trial court, attorney William P. Boggs was appointed to represent the appellant at trial. On December 14, 2001, after filing several pre-trial motions on behalf of the appellant, Boggs moved to withdraw as the appellant's counsel.[2] The trial court granted Boggs's motion to withdraw on January 7, 2002. On January 16, 2002, the appellant filed a motion to represent himself at trial.[3] On April 1, 2002,

---

[1] Faretta v. California, 422 U.S. 806 (1975).

[2] Boggs's motion stated that he wished to withdraw due to a lack of cooperation by the appellant.

[3] That motion, titled "Motion for myself to act as my attorney" stated: "This is to inform the court that I, [the appellant], is (sic) planning to act as my own attorney. To

2

the trial court appointed David Karn to act as an advisor to assist the appellant in his pro se defense. The appellant filed a number of additional motions between the time his counsel withdrew and the case being called for trial. The appellant filed discovery motions seeking disclosure of exculpatory materials from the prosecutor and records from the Department of Human Resources; a motion seeking transcripts from grand jury and court proceedings; a motion requesting the trial judge to recuse; and a motion for Karn to withdraw as his legal advisor. The appellant also sought to subpoena his file from Boggs and asserted discovery violations on the part of the district attorney's office. In most of his motions, the appellant cited to various rules of criminal procedure and rules of judicial administration.

On June 24, 2002, the case was called to trial and the appellant was present with Karn present to advise the appellant if he requested assistance. After the jury was struck, but before the State began to present evidence, the following exchange occurred:

> "THE COURT: This is CC-01-0244, Circuit Court of Chilton County, State versus [the appellant]. He's before the Court today pro se. David Karn is here as monitor appointed counsel. Kyle Massengale and Lisa Melvin are present for the DA's office.
>
> "Mr. Karn, did you want to place something on the record, please?
>
> "MR. KARN: Your Honor, I would just like to clarify for the record that my role in this is to be an advisor to [the appellant] should he request it, but that I will not be having a particular active role in the trial of this matter. I just wanted it stated for the record that if [the appellant] does wish to have me assist him in some way, then I will be glad to do that. The Court should also be aware that due to the nature of my involvement or lack of involvement in this case, I don't have much of a court file -- a case file. Consequently, the

---

get to the truth." (C. 127.)

3

particulars of this case are not with me due to the way that my appointment was made.

"THE COURT: Mr. [appellant], is that the way you would have it, you want it to be?

"[The appellant]: Yes, sir."

(R. 24-25.) The trial court asked the appellant if he had any questions, and the appellant began to discuss alleged discovery violations he claimed were committed by the prosecutor. The trial commenced and the appellant was convicted and sentenced as discussed earlier in this opinion. The appellant filed a notice of appeal and requested counsel be appointed on appeal. The appellant questioned the potential jurors about various subjects, including possible prejudices. During the sentencing hearing, the appellant argued the definition of pornography and cited Miller v. California, 413 U.S. 15 (1972) and Ashcroft v. A.C.L.U., 535 U.S. 564 (2002).

We note the following from this Court's opinion in Coughlin v. State, [Ms. CR-00-2610, May 31, 2002] ___ So. 2d ___ (Ala. Crim. App. 2002):

> "A defendant's decision to represent himself necessarily involves the waiver of his right to counsel. See Fitzpatrick v. Wainwright, 800 F.2d 1057, 1064 (1986). In Pratt v. State, [Ms. CR-00-2495, March 22, 2002] ___ So. 2d ___, ___ (Ala. Crim. App. 2002), this Court pointed out:
>
>> "'"The constitutional 'right to counsel, or waiver thereof, is an essential jurisdictional prerequisite to the authority to convict an accused[, and c]onviction without this safeguard is void.' People v. Carroll, 140 Cal. App. 3d 135, 140, 189 Cal. Rptr. 327, 331 (Cal. App. 2 Dist.), cert. denied, 464 U.S. 820, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983) (citing

4

> Johnson v. Zerbst [, 304 U.S. 458 (1938)]). Unless a defendant has or waives assistance of counsel, the Sixth Amendment is a jurisdictional bar to a valid conviction and sentence. Johnson v. Zerbst; Stokes v. Singletary, 952 F.2d 1567 (11th Cir. 1992); Boruff v. United States, 310 F.2d 918 (5th Cir. 1962). See also Lancaster v. State, [638 So. 2d 1370, 1373] (Ala. Cr. App. 1993) ('the appellant's ... right to have counsel appointed on appeal [is a] jurisdictional matter[]'); Lake v. City of Birmingham, 390 So. 2d 36, 38 (Ala. Cr. App. 1980) (a record failing to reveal any of the circumstances surrounding the appellant's self-representation 'will not support the trial court's judgment wherein the appellant was sentenced to a loss of liberty')."

"'Berry v. State, 630 So. 2d 127, 130 (Ala. Crim. App. 1993) (footnote omitted). See also Custis v. United States, 511 U.S. 485, 494 (1994) ("'If the accused ... is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. ... The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by habeas corpus.'" (quoting Johnson v. Zerbst, 304 U.S. 458, 468 (1938)); Weakley v. State, 721 So. 2d 235, 236 (Ala. 1998) (holding that the right to counsel at arraignment is a jurisdictional matter).'

> "Thus it is the lack of counsel, coupled with the absence of a knowing and intelligent waiver thereof, that acts to deny the defendant counsel and to jurisdictionally bar his prosecution.
>
>> "'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused -- whose life or liberty is at stake -- is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.'

"_Johnson v. Zerbst_, 304 U.S. 458, 465 (1938).

> "Rule 6.1(b), Ala.R.Crim.P., provides a framework to ensure that a defendant's waiver of counsel is knowing and intelligent:
>
>> "'A defendant may waive his or her right to counsel in writing or on the record, after the court has ascertained that the defendant knowingly, intelligently, and voluntarily desires to forgo that right. At the time of accepting a defendant's waiver of the right to counsel, the court shall inform the defendant that the waiver may be withdrawn and counsel appointed or retained at any stage of the proceedings. . . .
>>
>> "'If a nonindigent defendant appears without counsel at any proceeding after having been given a reasonable time to retain counsel, the cause shall proceed. If an indigent defendant who has refused

> appointed counsel in order to obtain private counsel appears without counsel at any proceeding after having been given a reasonable time to retain counsel, the court shall appoint counsel unless the indigent defendant waives his right under this rule. If the indigent defendant continues to refuse appointed counsel, the cause shall proceed.'

"Certainly, the provisions of Rule 6.1(b) are mandatory, and, if a defendant properly preserves and presents an argument on appeal that the trial court faltered in its application of the mandatory provisions of Rule 6.1(b), he is entitled to relief. See, e.g., Ex parte King, 797 So. 2d 1191 (Ala. 2001). However, the fact that a trial court forgoes those provisions does not necessarily indicate that a defendant unknowingly, unintelligently, and involuntarily has waived his right to counsel. That is, the fact that a trial court fails to abide by the letter of Rule 6.1(b) and Faretta [v. California, 422 U.S. 806 (1975)] does not necessarily result in the defendant's being deprived of counsel and, thus, the trial court's being jurisdictionally barred from rendering a judgment. See Tomlin v. State, 601 So. 2d 124, 128 (Ala. 1991) ('Although the Supreme Court in Faretta states that a defendant should be made aware of the dangers and disadvantages of self-representation, the Supreme Court does not require a specific colloquy between the trial judge and the defendant.'). See also Fitzpatrick v. Wainwright, 800 F. 2d 1057, 1065 (11th Cir. 1986) ('The ultimate test is not the trial court's express advice, but rather the defendant's understanding.').

"Whether a defendant who chooses to represent himself has knowingly, intelligently, and voluntarily waived his right to counsel can be indicated by the record or by the totality of the circumstances surrounding the waiver. See Johnson v. Zerbst, 304 U.S. 458, 464 (1938) ('The

determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'). See also Clemons v. State, 814 So. 2d 317 (Ala. Crim. App. 2001) (citing Monte v. State, 690 So. 2d 517 (Ala. Crim. App. 1996)); Johnston v. City of Irondale, 671 So. 2d 777 (Ala. Crim. App. 1995); Warren v. City of Enterprise, 641 So. 2d 1312 (Ala. Crim. App. 1994); Siniard v. State, 491 So. 2d 1062 (Ala. Crim. App. 1986). See also Faretta, 422 U.S. at 835 ('Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Adams v. United States ex rel. McCann, 317 U.S. [269, 279 (1942)].').

"From the reasoning above, we conclude that, although certainly some sort of colloquy or waiver hearing is preferable, it is not a per se denial of the right to counsel when a defendant represents himself without the record affirmatively showing that the trial court followed the procedures of Rule 6.1(b) or issued the warnings against self-representation found in Faretta. Rather, it is sufficient that a defendant knowingly, intelligently, and voluntarily waives his right to counsel 'in writing or on the record.' Rule 6.1(b)."

___ So. 2d at ___. Similarly, in Tomlin v. State, 601 So. 2d 124 (Ala. 1991), the Alabama Supreme Court stated:

"In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed. 2d 562 (1975), the Supreme Court held that a defendant has a Sixth Amendment right to represent himself in a criminal case. In order to conduct his own defense, the defendant must 'knowingly' and 'intelligently' waive his right to

counsel, because in representing himself he is relinquishing many of the benefits associated with the right to counsel. <u>Faretta</u>, 422 U.S. at 835, 95 S.Ct. at 2541. The defendant 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."' <u>Faretta</u>, 422 U.S. at 835, 95 S.Ct. at 2541 (other citations omitted).

"The burden of proof in the present case is on the defendant. When a defendant has clearly chosen to relinquish his right to counsel and has asserted his right to self-representation, and on appeal asserts that he was denied the right to counsel, he has the burden of showing, '"by a preponderance of the evidence, that he did not intelligently and understandingly waive his right to counsel."' <u>Teske v. State</u>, 507 So. 2d 569, 571 (Ala.Cr.App. 1987), quoting <u>Moore v. Michigan</u>, 355 U.S. 155, 161-62, 78 S.Ct. 191, 195, 2 L.Ed. 2d 167 (1957). The Supreme Court in <u>Carnley v. Cochran</u>, 369 U.S. 506, 516-17, 82 S.Ct. 884, 890-91, 8 L.Ed. 2d 70 (1962), held that when the record clearly shows that a defendant has expressly waived his right to counsel, the burden of proving that his waiver was not made knowingly and intelligently is on the defendant. 'A waiver of counsel can only be effectuated when the defendant asserts a "clear and unequivocal" right to self-representation.' <u>Westmoreland v. City of Hartselle</u>, 500 So.2d 1327, 1328 (Ala.Cr.App. 1986), citing <u>Faretta</u>, 422 U.S. 806, 95 S.Ct. 2525. If the record is not clear as to the defendant's waiver and request of self- representation, the burden of proof is on the State. <u>Carnley</u>, 369 U.S. at 517, 82 S.Ct. at 890-91. Presuming a waiver from a silent record is impermissible. <u>Carnley</u>.

". . . .

"Although the Supreme Court in <u>Faretta</u> states that a defendant should be made aware of the dangers and disadvantages of self-representation, the Supreme Court does not require a specific colloquy

9

between the trial judge and the defendant. 'The case law reflects that, while a waiver hearing expressly addressing the disadvantage of a pro se defense is much to be preferred, it is not absolutely necessary. The ultimate test is not the trial court's express advice but rather the defendant's understanding.' <u>Fitzpatrick v. Wainwright</u>, 800 F.2d 1057 (11th Cir. 1986) (citations omitted). In each case the court needs to look to the particular facts and circumstances involved, 'including the background, experience, and conduct of the accused.' <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

"This court looks to a totality of the circumstances involved in determining whether the defendant knowingly and intelligently waived his right to counsel. <u>Jenkins v. State</u>, 482 So. 2d 1315 (Ala.Cr.App. 1985); <u>King v. State</u>, 55 Ala.App. 306, 314 So. 2d 908 (Ala.Cr.App. 1975), cert. denied; <u>Ex parte King</u>, 294 Ala. 762, 314 So. 2d 912 (1975)."

601 So. 2d 124, 128-29.

As previously noted, the appellant filed a motion to represent himself and proceeded to file numerous pre-trial motions. The trial court appointed Karn to act as standby or advisory counsel and the record confirms that the appellant was aware that Karn was available to assist in his defense. The appellant filed a motion to have Karn withdrawn from that role; the trial court did not remove Karn.[4] It is clear from

---

[4] We note that the appellant's motion requested Karn be removed because, he claimed, Karn declined to represent the appellant when the appellant first approached Karn before the appellant was even indicted. The appellant's motion essentially stated that he did not trust any attorney in Chilton County. The appellant's motion did not, expressly or impliedly, amount to a request for different counsel. Considered alone or in tandem with his motion to represent himself, it indicated the appellant's desire to represent himself without the assistance of counsel.

10

our review of the record that the appellant made the decision to forgo his right to counsel and asserted his right to self-representation; thus, he has the burden of showing that his waiver of his right to counsel was not knowingly, intelligently, or voluntarily made. Tomlin, 601 So. 2d 124.

In United States v. Cash, 47 F. 3d 1083 (11th Cir. 1995), the Court noted:

> "However, the ultimate test for whether there has been a valid waiver of the right to counsel 'is not the trial court's express advice, but rather the defendant's understanding.' [United States v.] Fant, 890 F.2d [408,] 409 [11th Cir. 1989)]. In Fitzpatrick v. Wainwright, this Court enumerated the factors we consider when determining whether a record establishes a knowing, voluntary, and intelligent waiver. 800 F.2d 1057, 1065-67 (11th Cir. 1986). They are: (1) the defendant's age, educational background, and physical and mental health; (2) the extent of defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of charges, possible defenses, and penalties; (4) the defendant's understanding of rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed and the extent to which that counsel aided the defendant; (7) any mistreatment or coercion of defendant; and (8) whether the defendant was trying to manipulate the events of the trial. Id. All factors need not point in the same direction. See Stano [v. Dugger], 921 F.2d [1125,] 1145 [(11th Cir. 1991)]."

47 F. 3d at 1088-89.

Here, the record indicates that the appellant graduated from high school and attended technical college before withdrawing due to a lack of money. It appears from the record that the appellant's waiver of his right to counsel was not affected by any mental or physical impairments or drug or alcohol abuse. The appellant was represented by appointed counsel from August 2001 (when the case was assigned to the

11

trial judge) to January 7, 2002 (when the trial judge granted appointed counsel's motion to withdraw); the appellant had a court-appointed legal advisor from April 1, 2002, through the end of the trial. The appellant waived the reading of the indictment; that waiver included certifications from the appellant and his appointed counsel that counsel had explained to the appellant the rights the appellant was giving up by waiving arraignment, that the appellant understood the rights he was giving up by waiving arraignment, and that he had been informed of the charges against him. We also note that, at trial, the appellant questioned various witnesses about the difference between child pornography and adult pornography, about whether the disk he gave to D.W. contained child pornography or adult pornography, and that he asked a series of questions intending to solicit answers to the effect that the individuals in the images may have been over the age of 17 despite their youthful appearance. Similarly, the various motions filed by the appellant and his references to appropriate rules of procedure indicate that he had an awareness of the legal process and legal procedure, as did his questioning of witnesses and the potential jurors during jury selection, and his reference to several United States Supreme Court cases during sentencing. The trial court appointed standby counsel to assist the appellant in his defense and the appellant attempted to have standby counsel removed because, essentially, the appellant indicated that he did not trust any attorney in Chilton County. The record indicates that the appellant was aware that Karn was available to assist him. There is no evidence in the record indicating that the appellant was coerced into representing himself or waiving his right to counsel.

Although it appears that this was the appellant's first appearance in court on a felony charge and that he was not fully apprised of courtroom decorum and procedure, after reviewing the record on appeal, we conclude that, under the totality of the circumstances, the appellant has failed to demonstrate by a preponderance of the evidence that he did not knowingly, intelligently, and voluntarily waive his right to counsel.

Based on the foregoing, the judgment of the circuit court is affirmed.

Affirmed by Memorandum.

McMillan, P.J., and Cobb and Wise, JJ., concur. Baschab, J., dissents.