Chappell
7/22/03 Brief in Opp.

## IN THE SUPREME COURT OF ALABAMA

ROBERT REX EDWARDS,    )
                    )
     Petitioner,    )     **CASE NO.**
                    )
vs.               )     **On Appeal from the**
                    )     **Circuit Court of**
THE STATE OF ALABAMA,   )     **Chilton County,**
                    )     **Alabama**
     Respondent.    )

### CC -01-244

---

### PETITION FOR WRIT OF CERTIORARI
### TO THE ALABAMA COURT OF CRIMINAL APPEALS
### CRIM. APP. NO. 01-2180

---

Elizabeth H. Huntley
*Attorney for Petitioner*
402 1st Avenue
Clanton, AL 35045
(205) 280-6552
(205) 280-6713



EXHIBIT

H

IN THE SUPREME COURT OF ALABAMA

ROBERT REX EDWARDS,      )
                         )
     Petitioner,       )       CASE NO.
                         )
vs.                   )       On Appeal from the
                         )       Circuit Court of
THE STATE OF ALABAMA,    )       Chilton County,
                         )       Alabama
     Respondent.       )

CRIM. APP. NO. 01-2180
CC-01-244

---

## PETITION FOR WRIT OF CERTIORARI
## <u>TO THE ALABAMA COURT OF CRIMINAL APPEALS</u>

**TO THE SUPREME COURT OF ALABAMA:**

Comes now ROBERT REX EDWARDS, petitioner in the above-styled cause, and pursuant to Rule 39 of the Alabama Rules of Appellate Procedure, move this Court for a writ of certiorari to the Alabama Court of Criminal Appeals. In support of said petition, petitioner states as follows:

### <u>Procedural Background</u>

ROBERT REX EDWARDS (hereinafter referred to as "EDWARDS") was arrested by the Chilton County Sheriff's

Department on June 22, 2001 on charges of Sexual Abuse 1st (two counts) and Possession of Pornographic Material (30 counts[C. 7-70]. EDWARDS was released from jail on bond on July 3, 2001 [C-1].

EDWARDS was then indicted on August 10, 2001 for one count of Production of Obscene Matter, two counts of Sexual Abuse, First Degree and thirty counts of Possession of Obscene Matter of Persons Under 17 years old [C. 103].

On August 26, 2001, EDWARDS filed a Plea of Not Guilty and Waiver of Arraignment [C. 120]. On September 6, 2001 a trial date of November 13, 2001 was set with a plea date of October 9, 2001 [C. 121].

On the plea date of October 9, 2001 the case was continued to December 10, 2001 with the plea held open [C. 2]. On December 10, 2001 testimony was taken on motions to suppress and/or dismiss, both motions were denied [C. 2].

On January 16, 2002, among various discovery motions, the appellant filed a motion to act as his own attorney. [C. 127-129]

On April 1, 2002 the plea was closed and the case set for trial on June 24, 2002[C. 3]. On the same date, the court granted the appellant's motion to act as his own

attorney and appointed the Honorable David Karn as an advisor. [C.3].

On April 2, 2002, the appellant filed a motion for the removal of Judge Reynolds as judge of his case. [C. 132]. On April 19, 2002, the appellant filed a motion to withdraw Hon. Karn as his legal advisor. [C. 134]. The court set both motions for a hearing on May 8, 2002. [C. 3].

On June 24, 2002 the case was called, EDWARDS was present to represent himself with his court appointed advisor, David Karn [C. 3]. The jury voir dire was held and a jury selected [C. 3, R. 5-29].

The trial was held on June 28, 2002 with EDWARDS representing himself, with David Karn as his advisor [C. 3]. Testimony was taken, the case was given to the jury, who returned verdicts of guilty on all counts of the indictment [C. 3-6, R. 29-225].

On July 29, 2002, EDWARDS was sentenced to ten years on each of the Sexual Abuse, first degree convictions, to run consecutively [C. 194-195, R. 236-237]. On each of the convictions for Possession of Pornographic Material, EDWARDS was sentenced to ten years to run concurrently [C. 194-195, R. 236-237].

On August 2, 2002, EDWARDS filed his notice of appeal and Elizabeth H. Huntley was appointed as appeal counsel [C. 6].

On May 30, 2003, the Alabama Court of Criminal Appeals affirmed the conviction from the Chilton County Circuit Court, and on J une 24, 2003 the Court of Criminal Appeals denied EDWARDS Motion to file application for rehearing out of time.

## STATEMENT OF FACTS

On May 7, 2001, Mrs. Angela Bryant reported to the Thorsby Police Department that her son, Joshua, had been molested by EDWARDS [R. 102]. Chief of Police for Thorsby, Alabama, Edward Prady, subsequently took verbal and written statements from Joshua Bryant and Steven Kidd, another minor possibly molested by EDWARDS [R. 102-103]. In Joshua Bryant's statement, he said that EDWARDS touched him in the privates and was looking and groping it. Bryant also stated that EDWARDS told him not to tell anybody or else. [R. 78].

The minors were then interviewed by Child Protect in Montgomery, Alabama. Chief Prady was present in the building during those interviews and was able to view them on a video monitor as well as hear the audio [R. 104].

On May 18, 2001, a search warrant was executed at EDWARDS' residence at the Cross Creek Trailer Park in Thorsby, Alabama to confiscate any evidence relating to crimes of sexual abuse[R. 105-106,145-147, 242-245]. Among the items seized were video cassettes, pornographic magazines and computer hard drives [R. 106]. EDWARDS arrived at the residence during the search and was arrested

at that time on the two charges of sexual abuse first degree [R. 107].

After EDWARDS was placed under arrest and given his Miranda rights, he was placed in a police car with Chief Prady and Lieutenant Jay Edwards of the Chilton County Sheriff's Department [R. 110].  At that time EDWARDS gave a statement to the officers wherein he admitted that he had developed a relationship with the boys, becoming friends with them.  He stated that Josh Bryant and Steve Kidd had spent the night at his home, during which time they talked about being sexually active and showed each other their penis'.  He also admitted to touching and stroking both of the boys' penis', but added that they were wearing condoms and lotion at the time.  EDWARDS also stated that the boys looked at pornographic magazines and pornography on his computer[C. 246, R. 110-115].

The mother testified that when Josh returned home early the next morning he was acting funny and covered up on the sofa, but would not immediately tell her what was wrong. Josh finally did tell his mother that EDWARDS had touched him while he spent the night and that was why he came home

early and that he wanted to wait and talk to his Dad [R.
56-57].

Josh stated that before the night of the sexual abuse,
EDWARDS had pulled up pornography on his computer for him
to look at and taught him how to access the files himself
[R. 73-74]. On the night of the abuse Josh was asleep and
awoke to find EDWARDS "playing with his private parts".

A friend of Josh Bryant's, Steven Kidd, also reported
being sexually abused by EDWARDS on two occasions. Steven
testified that each time Steven told EDWARDS to stop, but
he did not. [R. 89-94, 243] The first incident occurred
when Steven spent the night with EDWARDS by himself [R. 89-
90]. The second incident occurred the next night when
Steven, Josh and Josh's brother, Travis spent the night at
EDWARDS' [R. 90-91]. According to Steven, EDWARDS sexually
abused him after EDWARDS had allowed the minors to view
pornography on the computer [R. 91-92].

On June 24, 2002, the case was called with EDWARDS'
representing himself with David Karn present as appointed
advisor. [R. 5-29]

Testimony was taken from the victims and law
enforcement officials. At the end of testimony the jury

8

returned a verdict of guilty on all counts of the indictment. [R. 29-225]

On July 29, 2002, EDWARDS was sentenced to ten years on each of the Sexual Abuse charges to run consecutively. [C. 194-195; R. 236-237] On each of the convictions for Possession of Pornographic Material, EDWARDS was sentenced to ten years to run concurrently.[C. 194-195; R.0236-237]

On August 2, 2002, EDWARDS filed a notice of appeal. [C. 6] On May 30, 2003, the conviction was affirmed by the Court of Criminal Appeals and on June 24, 2003, the Court of Criminal Appeals denied EDWARDS' Motion to file his Application for Re-Hearing out of time.

## Reasons Why the Writ Should Be Granted

Petitioner alleges as grounds for the issuance of the writ the following:

The basis for this petition for writ is that EDWARDS' conviction is due to be overturned because the trial court committed reversible error by allowing EDWARDS' to represent himself after he indicated that he did not want Mr. Karn to represent him, however would have accepted counsel from outside of Chilton County.

The Court should grant the Petition for Writ of Certiorari and review the decision of the Court of Criminal Appeals in this case. The Alabama court of Criminal Appeals incorrectly decided this case contrary to the United States Constitution, the Alabama Constitution, prior decisions of this Court, and even its own prior decisions. Petitioner respectfully requests that after a preliminary examination of this matter, the writ of certiorari be granted and that this Court proceed under its rules to review the issues in this case. Petitioner further relies upon his forthcoming brief in support of the Petition for Writ of Certiorari.

Respectfully submitted,

Elizabeth H. Huntley
*Attorney for Petitioner*

10

## IN THE SUPREME COURT OF ALABAMA

ROBERT REX EDWARDS,    )
                       )
      Petitioner,    )     CASE NO.
                       )
vs.                 )     On Appeal from the
                       )     Circuit Court of
THE STATE OF ALABAMA,    )     Chilton County,
                       )     Alabama
      Respondent.    )

      CRIM.        APP.         NO.      01-2180
CC-01-244

---

## CERTIFICATE OF SERVICE

    I certify that I have this date caused to be served a copy of the foregoing petition upon all parties in this cause by placing a copy of same in the United States mail, postage prepaid, addressed as follows on this the 2nd day of August 2002.

Hon. William H. Pryor, Jr.    Chilton Co. District Atty.
Attorney General, State of AL    P.O. 1053
11 South Union Street    Clanton, AL 35046
Montgomery, AL 36130

Hon. Lane W. Mann
Clerk, AL Ct. of Crim. Appeals
300 Dexter Avenue
Montgomery, AL 36130

                              Elizabeth H. Huntley
                              Counsel for Appellant
                              P.O. Box 1545
                              Clanton, AL 35046

                              (205) 280-6552

paragraph and review. Of the sheriff's department. The images on the disk were later determined to contain child pornography.

The evidence also indicated that 9-year-old J.B. and his friend S.K., spent the night with the appellant, who was approximately 40 years of age; that the appellant and the minors viewed pornographic material on the appellant's computer; and that the appellant touched or stroked each child's penis. Gary Graves, a computer forensics officer, testified that the appellant had thousands of pornographic images on his computer and that 50-60 of those images appeared to contain child pornography.

The appellant admitted that the minors spent the night at his residence and he admitted to touching J.B.'s penis. He stated that it was his belief that the people in the images in his computer were over 18 years of age.

The sole issue the appellant argues on appeal is that his waiver of counsel was not knowingly and intelligently entered. Specifically, the appellant contends that the trial court never conducted a Faretta[1] hearing or advised him of the dangers of self-representation.

The appellant was granted indigency status for the purposes of trial. On August 15, 2001, the day that the case was assigned to the trial court, attorney William P. Boggs was appointed to represent the appellant at trial. On December 14, 2001, after filing several pre-trial motions on behalf of the appellant, Boggs moved to withdraw as the appellant's counsel.[2] The trial court granted Boggs's motion to withdraw on January 7, 2002. On January 16, 2002, the appellant filed a motion to represent himself at trial.[3] On April 1, 2002,

_____

[1] Faretta v. California, 422 U.S. 806 (1975).

[2] Boggs's motion stated that he wished to withdraw due to a lack of cooperation by the appellant.

[3] That motion, titled "Motion for myself to act as my attorney" stated: "This is to inform the court that I, [the appellant], is (sic) planning to act as my own attorney. To

2

the trial court appointed David Karn to act as an advisor to assist the appellant in his pro se defense. The appellant filed a number of additional motions between the time his counsel withdrew and the case being called for trial. The appellant filed discovery motions seeking disclosure of exculpatory materials from the prosecutor and records from the Department of Human Resources; a motion seeking transcripts from grand jury and court proceedings; a motion requesting the trial judge to recuse; and a motion for Karn to withdraw as his legal advisor. The appellant also sought to subpoena his file from Boggs and asserted discovery violations on the part of the district attorney's office. In most of his motions, the appellant cited to various rules of criminal procedure and rules of judicial administration.

On June 24, 2002, the case was called to trial and the appellant was present with Karn present to advise the appellant if he requested assistance. After the jury was struck, but before the State began to present evidence, the following exchange occurred:

> "THE COURT: This is CC-01-0244, Circuit Court of Chilton County, State versus [the appellant]. He's before the Court today pro se. David Karn is here as monitor appointed counsel. Kyle Massengale and Lisa Melvin are present for the DA's office.
>
> "Mr. Karn, did you want to place something on the record, please?
>
> "MR. KARN: Your Honor, I would just like to clarify for the record that my role in this is to be an advisor to [the appellant] should he request it, but that I will not be having a particular active role in the trial of this matter. I just wanted it stated for the record that if [the appellant] does wish to have me assist him in some way, then I will be glad to do that. The Court should also be aware that due to the nature of my involvement or lack of involvement in this case, I don't have much of a court file -- a case file. Consequently, the

get to the truth." (C. 127.)

3

particulars of this case are not with me due to the
way that my appointment was made.

        "THE COURT:  Mr. [appellant], is that the way
you would have it, you want it to be?

        "[The appellant]:  Yes, sir."

(R. 24-25.)  The trial court asked the appellant if he had any
questions, and the appellant began to discuss alleged
discovery violations he claimed were committed by the
prosecutor.    The trial commenced and the appellant was
convicted and sentenced as discussed earlier in this opinion.
The appellant filed a notice of appeal and requested counsel
be appointed on appeal.    The appellant questioned the
potential jurors about various subjects, including possible
prejudices.    During the sentencing hearing, the appellant
argued the definition of pornography and cited Miller v.
California, 413 U.S. 15 (1972) and Ashcroft v. A.C.L.U., 535
U.S. 564 (2002).

        We note the following from this Court's opinion in
Coughlin v. State, [Ms. CR-00-2610, May 31, 2002] ___ So. 2d
___ (Ala. Crim. App. 2002):

        "A defendant's decision to represent himself
necessarily involves the waiver of his right to
counsel.  See Fitzpatrick v. Wainwright, 800 F.2d
1057, 1064 (1986).  In Pratt v. State, [Ms.
CR-00-2495, March 22, 2002] ___  So. 2d ___, ___
(Ala. Crim. App. 2002), this Court pointed out:

                "'"The constitutional 'right
        to counsel, or waiver thereof, is
        an  essential  jurisdictional
        prerequisite to the authority to
        convict  an  accused[, and
        c]onviction  without  this
        safeguard is void.'  People v.
        Carroll, 140 Cal. App. 3d 135,
        140, 189 Cal. Rptr. 327, 331
        (Cal. App. 2 Dist.), cert.
        denied, 464 U.S. 820, 104 S.Ct.
        83, 78 L.Ed.2d 93 (1983) (citing

4

Johnson v. Zerbst [, 304 U.S. 458
(1938)]). Unless a defendant has
or waives assistance of counsel,
the Sixth Amendment is a
jurisdictional bar to a valid
conviction and sentence. Johnson
v. Zerbst; Stokes v. Singletary,
952 F.2d 1567 (11th Cir. 1992);
Boruff v. United States, 310 F.2d
918 (5th Cir. 1962). See also
Lancaster v. State, [638 So. 2d
1370, 1373] (Ala. Cr. App. 1993)
('the appellant's ... right to
have counsel appointed on appeal
[is a] jurisdictional matter[]');
Lake v. City of Birmingham, 390
So. 2d 36, 38 (Ala. Cr. App.
1980) (a record failing to reveal
any of the circumstances
surrounding the appellant's
self-representation 'will not
support the trial court's
judgment wherein the appellant
was sentenced to a loss of
liberty')."

"'Berry v. State, 630 So. 2d 127, 130 (Ala.
Crim. App. 1993) (footnote omitted). See
also Custis v. United States, 511 U.S. 485,
494 (1994) ("'If the accused ... is not
represented by counsel and has not
competently and intelligently waived his
constitutional right, the Sixth Amendment
stands as a jurisdictional bar to a valid
conviction and sentence depriving him of
his life or his liberty. ... The judgment
of conviction pronounced by a court without
jurisdiction is void, and one imprisoned
thereunder may obtain release by habeas
corpus.'" (quoting Johnson v. Zerbst, 304
U.S. 458, 468 (1938)); Weakley v. State,
721 So. 2d 235, 236 (Ala. 1998) (holding
that the right to counsel at arraignment is
a jurisdictional matter).'

5

"Thus it is the lack of counsel, coupled with the absence of a knowing and intelligent waiver thereof, that acts to deny the defendant counsel and to jurisdictionally bar his prosecution.

"'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused -- whose life or liberty is at stake -- is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.'

"Johnson v. Zerbst, 304 U.S. 458, 465 (1938).

"Rule 6.1(b), Ala.R.Crim.P., provides a framework to ensure that a defendant's waiver of counsel is knowing and intelligent:

"'A defendant may waive his or her right to counsel in writing or on the record, after the court has ascertained that the defendant knowingly, intelligently, and voluntarily desires to forgo that right. At the time of accepting a defendant's waiver of the right to counsel, the court shall inform the defendant that the waiver may be withdrawn and counsel appointed or retained at any stage of the proceedings. ...

"'If a nonindigent defendant appears without counsel at any proceeding after having been given a reasonable time to retain counsel, the cause shall proceed. If an indigent defendant who has refused

6

appointed counsel in order to obtain private counsel appears without counsel at any proceeding after having been given a reasonable time to retain counsel, the court shall appoint counsel unless the indigent defendant waives his right under this rule. If the indigent defendant continues to refuse appointed counsel, the cause shall proceed.'

---

"Certainly, the provisions of Rule 6.1(b) are mandatory, and, if a defendant properly preserves and presents an argument on appeal that the trial court faltered in its application of the mandatory provisions of Rule 6.1(b), he is entitled to relief. See, e.g., Ex parte King, 797 So. 2d 1191 (Ala. 2001). However, the fact that a trial court forgoes those provisions does not necessarily indicate that a defendant unknowingly, unintelligently, and involuntarily has waived his right to counsel. That is, the fact that a trial court fails to abide by the letter of Rule 6.1(b) and Faretta [v. California, 422 U.S. 806 (1975)] does not necessarily result in the defendant's being deprived of counsel and, thus, the trial court's being jurisdictionally barred from rendering a judgment. See Tomlin v. State, 601 So. 2d 124, 128 (Ala. 1991) ('Although the Supreme Court in Faretta states that a defendant should be made aware of the dangers and disadvantages of self-representation, the Supreme Court does not require a specific colloquy between the trial judge and the defendant.'). See also Fitzpatrick v. Wainwright, 800 F. 2d 1057, 1065 (11th Cir. 1986) ('The ultimate test is not the trial court's express advice, but rather the defendant's understanding.').

"Whether a defendant who chooses to represent himself has knowingly, intelligently, and voluntarily waived his right to counsel can be indicated by the record or by the totality of the circumstances surrounding the waiver. See Johnson v. Zerbst, 304 U.S. 458, 464 (1938) ('The

7

determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'). See also Clemons v. State, 814 So. 2d 317 (Ala. Crim. App. 2001) (citing Monte v. State, 690 So. 2d 517 (Ala. Crim. App. 1996)); Johnston v. City of Irondale, 671 So. 2d 777 (Ala. Crim. App. 1995); Warren v. City of Enterprise, 641 So. 2d 1312 (Ala. Crim. App. 1994); Siniard v. State, 491 So. 2d 1062 (Ala. Crim. App. 1986). See also Faretta, 422 U.S. at 835 ('Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Adams v. United States ex rel. McCann, 317 U.S. [269, 279 (1942)].').

"From the reasoning above, we conclude that, although certainly some sort of colloquy or waiver hearing is preferable, it is not a per se denial of the right to counsel when a defendant represents himself without the record affirmatively showing that the trial court followed the procedures of Rule 6.1(b) or issued the warnings against self-representation found in Faretta. Rather, it is sufficient that a defendant knowingly, intelligently, and voluntarily waives his right to counsel 'in writing or on the record.' Rule 6.1(b)."

___ So. 2d at ___. Similarly, in Tomlin v. State, 601 So. 2d 124 (Ala. 1991), the Alabama Supreme Court stated:

"In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed. 2d 562 (1975), the Supreme Court held that a defendant has a Sixth Amendment right to represent himself in a criminal case. In order to conduct his own defense, the defendant must 'knowingly' and 'intelligently' waive his right to

8

between the trial judge and the defendant.  'The case law reflects that, while a waiver hearing expressly addressing the disadvantage of a pro se defense is much to be preferred, it is not absolutely necessary. The ultimate test is not the trial court's express advice but rather the defendant's understanding.' <u>Fitzpatrick v. Wainwright</u>, 800 F.2d 1057 (11th Cir. 1986) (citations omitted).  In each case the court needs to look to the particular facts and circumstances involved, 'including the background, experience, and conduct of the accused.' <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

"This court looks to a totality of the circumstances involved in determining whether the defendant knowingly and intelligently waived his right to counsel. <u>Jenkins v. State</u>, 482 So. 2d 1315 (Ala.Cr.App. 1985); <u>King v. State</u>, 55 Ala.App. 306, 314 So. 2d 908 (Ala.Cr.App. 1975), cert. denied; <u>Ex parte King</u>, 294 Ala. 762, 314 So. 2d 912 (1975)."

601 So. 2d 124, 128-29.

As previously noted, the appellant filed a motion to represent himself and proceeded to file numerous pre-trial motions.  The trial court appointed Karn to act as standby or advisory counsel and the record confirms that the appellant was aware that Karn was available to assist in his defense. The appellant filed a motion to have Karn withdrawn from that role; the trial court did not remove Karn.[4]  It is clear from

---

[4]We note that the appellant's motion requested Karn be removed because, he claimed, Karn declined to represent the appellant when the appellant first approached Karn before the appellant was even indicted.  The appellant's motion essentially stated that he did not trust any attorney in Chilton County.  The appellant's motion did not, expressly or impliedly, amount to a request for different counsel. Considered alone or in tandem with his motion to represent himself, it indicated the appellant's desire to represent himself without the assistance of counsel.

our review of the record that the appellant made the decision to forgo his right to counsel and asserted his right to self-representation; thus, he has the burden of showing that his waiver of his right to counsel was not knowingly, intelligently, or voluntarily made. Tomlin, 601 So. 2d 124.

In United States v. Cash, 47 F. 3d 1083 (11th Cir. 1995), the Court noted:

"However, the ultimate test for whether there has been a valid waiver of the right to counsel 'is not the trial court's express advice, but rather the defendant's understanding.' [United States v.] Fant, 890 F.2d [408,] 409 [11th Cir. 1989)]. In Fitzpatrick v. Wainwright, this Court enumerated the factors we consider when determining whether a record establishes a knowing, voluntary, and intelligent waiver. 800 F.2d 1057, 1065-67 (11th Cir. 1986). They are: (1) the defendant's age, educational background, and physical and mental health; (2) the extent of defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of charges, possible defenses, and penalties; (4) the defendant's understanding of rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed and the extent to which that counsel aided the defendant; (7) any mistreatment or coercion of defendant; and (8) whether the defendant was trying to manipulate the events of the trial. Id. All factors need not point in the same direction. See Stano [v. Dugger], 921 F.2d [1125,] 1145 [(11th Cir. 1991)]."

47 F. 3d at 1088-89.

Here, the record indicates that the appellant graduated from high school and attended technical college before withdrawing due to a lack of money. It appears from the record that the appellant's waiver of his right to counsel was not affected by any mental or physical impairments or drug or alcohol abuse. The appellant was represented by appointed counsel from August 2001 (when the case was assigned to the

11

trial judge) to January 7, 2002 (when the trial judge granted appointed counsel's motion to withdraw); the appellant had a court-appointed legal advisor from April 1, 2002, through the end of the trial. The appellant waived the reading of the indictment; that waiver included certifications from the appellant and his appointed counsel that counsel had explained to the appellant the rights the appellant was giving up by waiving arraignment, that the appellant understood the rights he was giving up by waiving arraignment, and that he had been informed of the charges against him. We also note that, at trial, the appellant questioned various witnesses about the difference between child pornography and adult pornography, about whether the disk he gave to D.W. contained child pornography or adult pornography, and that he asked a series of questions intending to solicit answers to the effect that the individuals in the images may have been over the age of 17 despite their youthful appearance. Similarly, the various motions filed by the appellant and his references to appropriate rules of procedure indicate that he had an awareness of the legal process and legal procedure, as did his questioning of witnesses and the potential jurors during jury selection, and his reference to several United States Supreme Court cases during sentencing. The trial court appointed standby counsel to assist the appellant in his defense and the appellant attempted to have standby counsel removed because, essentially, the appellant indicated that he did not trust any attorney in Chilton County. The record indicates that the appellant was aware that Karn was available to assist him. There is no evidence in the record indicating that the appellant was coerced into representing himself or waiving his right to counsel.

Although it appears that this was the appellant's first appearance in court on a felony charge and that he was not fully apprised of courtroom decorum and procedure, after reviewing the record on appeal, we conclude that, under the totality of the circumstances, the appellant has failed to demonstrate by a preponderance of the evidence that he did not knowingly, intelligently, and voluntarily waive his right to counsel.

Based on the foregoing, the judgment of the circuit court is affirmed.

Affirmed by Memorandum.

McMillan, P.J., and Cobb and Wise, JJ., concur. Baschab, J., dissents.