IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT REX EDWARDS,     )
  #225984,               )
                        )
        PETITIONER,    )
                        )
VS.                   )    CIVIL ACTION NO.
                        )    2:06-CV-177-WKW
                        )
BILLY MITCHEM, et al.,    )
                        )
        RESPONDENTS.   )

## SUPPLEMENTAL ANSWER

Come now the Respondents in the above styled cause, by and through the

Attorney General of the State of Alabama, in response to this Court's order on,

October 3, 2007, and answer Robert Rex Edwards's amended claims as follows:

1. Edwards filed a "Motion to Leave and Amend 42 USC § 2254" on

October 1, 2007, which this Court granted.  (Doc. 35, p. 17; Doc. 36)

2. In his motion, as it best appears to the Respondents, Edwards raised the

following convoluted claims:

1) "The Courts of the 19th Judicial Circuit of Alabama have

*intentionally or  willfully* removed pleadings sent to the once Honorable Court that

is now an Anti-Constitutionalist Relativist Court of Law" which violates the

Alabama and United States Constitutions and the Alabama Canons of Judicial Ethics.  (Doc. 35, p. 1)

2) By ordering him not to cite to case law, his claims will be precluded. (Doc. 35, p. 2-3)

3) Prison officials are opening mail and not forwarding it.  (Doc. 35, p. 4-5)

4) Alabama Courts do not follow United States Supreme Court precedent or the Federal Constitution.  (Doc. 35, p. 5)

5) "Wulke's[1] criminal background nor the deal was discovered until the petitioner went to Kilby CF."  (Doc. 35, p. 6)

6) The judge made improper comments, off the record, which tainted the jury.  (Doc. 35, p. 7)

7) The State withheld exculpatory evidence.  "Status of the files, deals with witnesses to testify, silent witness tapes, charges of the state's witnesses, conflict of advisor counsel, not subpoena[ing] that judge was told of and even more information on what type of investigation."  (Doc. 35, p. 7)

8) A deal was made with Wutke to dismiss or reduce charges.  (Doc. 35, p. 7)

9) There is a conflict between federal and state laws.  (Doc. 35, p. 7-8)

---

[1] As in Edwards's original petition, he refers to the witness as "Wulke," but the witness's last name was "Wutke."  (Ex. A, R. 38)

10) The indictment failed to comply with Rule 12.8 of the Alabama Rules of Criminal Procedure.  (Doc. 35 p. 8)

11) Attorney Boggs was not familiar with computers or the Alabama Computer Crime Act.  (Doc. 35, p. 8)

12) David Karn was appointed to represent Edwards, even though Edwards had fired him, and did not want to be represented by Karn.  (Doc. 35, p. 8-9)

13) Attorneys Boggs and Hayes never returned his files.  (Doc. 35, p. 9)

14) The prison law library does not contain appropriate legal materials. (Doc 35, p. 9)

15) Appellate counsel was ineffective for failing to abide by his wishes, and not knowing how to properly file a state certiorari petition.  (Doc. 35, p. 10)

16) The trial judge, Judge Reynolds, allowed evidence to be sent to the jury room that was not viewed in open court.  (Doc. 35, p. 11)

17) Attorney Karn was ineffective for failing to object.  (Doc. 35, p. 12)

18) Judge Reynolds failed to subpoena any witnesses that were requested by Edwards.  (Doc. 35, p. 12)

19) The judge was not familiar with the Computer Crime Act.  (Doc. 35, p. 12-13)

20) Judge Reynolds should have recused himself.  (Doc. 35, p. 12-13)

21) Edwards did not waive his objections to the jury instructions.  (Doc. 35, p. 14)

22)  The State violated its "Sunshine Act" by not allowing him the use of a microcassette recorder to record the proceedings or the use of a microcassette tape of a deceased witness.  (Doc. 35, p. 14)

23) The Alabama Supreme Court violated Supreme Court of the United States precedent and the United States Constitution when it decided Ex parte Seymour, 946 So. 2d 536 (Ala. 2006).  (Doc. 35, p. 14-15)

24) "[T]he prosecutor described the defen[dant] as an animal, actually 'a spider spinning his web.'  The jury did not have to put any humanity into their decision."  (Doc. 35, p. 16)

25) The court and the state of Alabama violated many of his rights as it relates to "*indictments, discovery,* and/or *transcripts."*  (Doc. 35, p. 16)

26) Prison officials are denying him access to the prison library and the library is inadequate.  (Doc. 35, p. 16-17)

3. This Court should deny Edwards's relief based on his amended claims, because the claims are either barred by the limitation period, as they do not relate back to his original pleadings, the arguments fail to state a claim upon which federal habeas relief can be granted, and/or the claims are procedurally defaulted.

**A.    Claims That Are Barred by the Limitations Period**

4. The Supreme Court of the United States recognized in <u>Mayle v. Felix</u>, 545 U.S. 644, 650 (2005), that "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." The Court acknowledged that the pleading requirements of a habeas claim under Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts presents a more demanding standard than the general pleading requirements of civil cases. "It provides that the petition must 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'" <u>Id.</u> at 655. The Court realized that a broad definition of the term "related back" to include any amendments that attacked the same conviction and sentence would effectively render worthless the one-year statute of limitations that Congress created in AEDPA. <u>See id.</u> at 662-63. Therefore, for Edwards's amended claims to relate back to his original claims they must be based on the same grounds for relief and facts raised in the original petition.

5. Edwards's raised the following issues in his original petition:

a. The search was illegal because it listed the wrong individual on the warrant, with an apparently different social security number than Edwards. (Edwards's pet., p. 5) "Search was made by the use of

priors of other person that was not me.  All warrants were for

Robert Scott Edwards 212 62 6138[.]  Later changed while in

custody or waiting tr[ia]l to Robert Rex Edwards 420 86-5715, but

they messed up and did not cover up completely[.]"  (Edwards's

pet., p. 5)  The search was also illegal because he never received a

property receipt and never received certain items back.  (Edwards's

pet., p. 5)  Further, the police broke into his car and stole his

briefcase when he came to court, and he never received a property

receipt for the briefcase or its contents.

> Never got property receipt for all stolen
> from my home (CV-01-214) [A state
> forfeiture case, see Ex. O]  None returned to
> me to include my business nic-nac grafts &
> gifts.  On June 28, 2002[,] the cops broke
> into my car and stole my briefcase that I
> took to court.  They forced the lock.  Inside
> was books and pictures from stores and
> libraries.  No receipt given.

(Edwards's pet., p. 5)

b. The arrest warrants were faulty for the same reasons as listed in

ground "A."  (Edwards's pet., p. 5)  Further, Edwards was

> [r]earrested and held for 11 days without
> seeing a judge or attorney.  30 counts later
> (2 ½ years) got 29 of the 30 set aside.  Judge
> Hardesty said she was never informed by the
> sheriff that I was in the jail.  A common
> practice of the law in Chilton County,

> Alabama.  All arrests warrants were issued
> after I was arrested not presented at my
> home June 22, 2001.

(Edwards's pet., p. 5)

c. Edwards's statement was coerced because "statements made while

   handcuffed not of free will."  (Edwards's pet., p. 5)  "Due to the

   known history of beating by law enforcement -- statement written

   by Lt. James 'Jay' Edwards not the accused.  Later statement

   written by the accused not Maranda used to notify of rights.  Was

   told I could go home if I wrote a statement."  (Edwards's pet., p. 5)

d. The State violated discovery principles under <u>Brady v. Maryland</u>,

   and also violated the Confrontation Clause.  (Edwards's pet., p. 7)

> Even when the judge granted discovery[,]
> the DA would not abide by it.  They said I
> had no right to what I own.  Not even
> copies.  I never got to review the videos
> (Confrontation Clause) or to interview any
> witnesses against me to prove false
> statements.  However, State Witnes[s]
> Wulke was later convicted and found out the
> deal with the DA.  Wulke also had prior
> felony not disclosed to the jury either nor
> [the] deal to reduce the sodomy charges[.]

(Edwards's pet., p. 7)

e. The principles of Double Jeopardy were violated.  "Ground- Double

   Jeopardy.  Proven on Counts 4-33 which made 5-33 set aside

illegal arrest on June 22, 2001 and held for 11 days in jail without bond, attorney or hearing.  Counts 2-3 are also Double Jeopardy involving more than 1 person at the same time[.]"  (Edwards's pet., p. 9)

f. The petit and grand juries were unconstitutional.  Edwards's claim appears to be that the possession of child pornography would criminalize nude pictures of children taken by their parents to show the growth of the child.  Further, the pictures he had were not lewd, but were mere nude pictures.  Also, he "knew a couple of the jurors in school and they did take pictures of themselves and their girlfriends under 17.  In fact it was a video he made."  (Edwards's pet. p. 9)

g. He received ineffective assistance of counsel.

> I had trouble with attorneys Boggs had me
> bring pictures I found in libraries and in
> books of nude subjects (children) and never
> presented them or gave them back to me.
> On Dec. 10, 2001 I was told by Hayes that
> they cannot be my attorney unless I gave her
> $4,000.00.  I only had $12.00

(Edwards's pet, p. 11)

> Karn was appointed and I fired him based on
> our conversation in his office in 2001.
> [Judge] Reynolds reappointed him 2 more
> times.  Finally on the day of my jury

selection[,] Reynolds made him my legal advisor.  He never said a word which continued on court day.  Even the Alabama Assistance general made a note of Karn's silence.  He also represented a family member of the plaintiff's party (conflict of interest)[.]  He also knew that DHR had record of prior cases on the plaintiff[]s that he did not disclose to the court.

(Edwards's pet., p. 11)

Huntley was appointed to do my direct appeal[,] but only on CC-01-244[.]  No one did CV-01-214 fruits of crime not Code/1975 § 13-12-198 by law.

(Edwards's pet. p. 11.  Note, the pages in his petition appear to

have been reversed, the following paragraph is page 10.)

Huntley only used my pro-se against me nothing on the constitutional grounds I established in court.  She also did the same thing to Nichalos Turner[,] 854 So2d 162 (Al[a.] Cr[im.] Ap[p.] 2003[.]  Turner was resentenced illegally again on the same indictment on Aug. 9, 2004.  Since [Judge] Reynolds had reversed my pro-se status I was not able to appeal case # CV-01-214 and lost over $10,000 in software, books, and other thing[s].  Along with my business Nic-Nac Grafts and Gifts.  Lisenced February 2001.  A SMC Novilty Business by Internet and vending.  None of my convictions were challenged by Huntley and my pro-se status was affirmed 2 for and 1 against.

(Edwards's pet., p. 10)

6. Issues 1) - 4), 6), 9) - 11), and 14) - 26) of the amended claims contained in Document 35, do not relate back to the original claims found in Edwards's habeas petition, but are all new theories or independent claims that were not presented to this Court, and should now be considered barred by the limitations period created in Title 28 U.S.C. § 2244(d) (West 2007).

7. Title 28 U.S.C. § 2244(d)(1) applies a one-year statute of limitation to an application for a writ of habeas corpus to an individual incarcerated pursuant to a state court judgment.

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

8. The legislation enacting the one-year statute of limitation applicable to federal habeas corpus petitions became effective on April 24, 1996. See Carey v. Saffold, 536 U.S. 214, 217 (2002) (noting the effective date of the federal limitation period); Drew v. Dept. of Corr., 297 F.3d 1278, 1282 (11th Cir. 2002) (same). In cases where the conviction is obtained following the one-year period, the defendant has one year from the date on which his conviction becomes final to mount a federal challenge. Title 28 U.S.C. § 2244(d)(1)(A).

9. Edwards's conviction became final on June 17, 2003. (Ex. E) Ninety-nine days elapsed between his conviction becoming final and the filing of his Rule 32 petition, on September 24[2], 2003. (Ex. J, C. 1) This tolled the time for filing his federal habeas corpus petition. Title 28 U.S.C. § 2244(d)(2).

10. The denial of his post-conviction petition became final on August 24, 2005. (Ex. N). Edwards, therefore, had 266 days remaining to file his habeas petition, or until May 17, 2006[3], and he filed his timely habeas petition on February 24, 2006. (Doc. 3-1, p. 1)

11. Edwards's amended claims contained in Document 35, were not filed, until, at the earliest, October 1, 2007, the date that Edwards dated the document.

---

[2] If this Court construes the filing date as the date Edwards's signed his petition, September 11, 2003, (Ex. J, C. 10) then only 86 days would have elapsed. This discrepancy, however, does not affect the State's overall argument.

[3] If this Court calculates from the September 11, 2003, date for the filing of the Rule 32 petition, then Edwards had 279 days from August 24, 2005, or until Tuesday May 30, 2006, to file the habeas petition.

(Doc. 35, p. 17)  This is approximately 17 months beyond the limitations period,
created by 28 U.S.C. § 2244(d), which ended in May 2006.  Consequently, issues
1) - 4), 6), 9) - 11), and 14) - 26) from the amended petition should be considered
time-barred, because they do not relate back to the original petition.  See Mayle,
U.S. at 650; see e.g., Davenport v. United States, 217 F.3d 1341, 1345-46 (11th
Cir. 2000)  (applying "relation back" principles to amended claims arising from a
28 U.S.C. § 2255 petition and holding that, because the amended claims involve a
different set of facts and theories, the amended claims do not relate back to the
original petition and were properly considered time-barred).

12. Edwards also failed to show any "extraordinary circumstances that are
both beyond his control and unavoidable with diligence" that would equitably toll
his untimely amended claims.  See Wyzykowski v. Dep't of Corr., 226 F.3d 1213,
1216 (11th Cir. 2000).  "Equitable tolling is appropriate when a movant untimely
files because of extraordinary circumstances that are both beyond his control and
unavoidable even with diligence."  Sandvik v. United States, 177 F. 3d 1269, 1271
(11th Cir. 1999).  "Equitable tolling is an extraordinary remedy which is typically
applied sparingly."  Steed v. Head, 219 F. 3d 1298, 1300 (11th Cir. 2000).

> ['][A]ny invocation of equity to relieve the strict application of a
> statute of limitations must be guarded and infrequent, lest
> circumstances of individualized hardship supplant the rules of clearly
> drafted statutes.  To apply equity generously would loose the rule of
> law to whims about the adequacy of excuses, divergent responses to
> claims of hardship, and subjective notions of fair accommodation.

[The Court] believe[s], therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.[']

Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000).

Jones v. United States, 304 F. 3d 1035, 1039 n.9 (11th Cir. 2002).

Edwards has not offered any extraordinary circumstances that were "both beyond his control and unavoidable even with diligence" to justify the equitable tolling of his amended claims.  "The 'extraordinary circumstances' standard ... focuses on the circumstances surrounding the late filing of the habeas petition, rather than the circumstances surrounding the underlying conviction." Helton v. Sec'y for the Dep't of Corr., 259 F. 3d 1310, 1314-15 (11th Cir. 2001).

**B.    Claims That Are Not Cognizable In a Federal Habeas Corpus Petition**

13.  The only claims that are properly before this Court are claims that challenge the lawfulness of Edwards's incarceration and that involve a deprivation of federal constitutional rights.  "Challenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus." Hill v. McDonough, 126 S.Ct. 2096, 2101 (2006) (internal citations omitted).  Federal habeas corpus review is limited to claims that arise from a violation of the United States's Constitution, laws, or treaties.  28 U.S.C. § 2241(c)(3) (West 2007).  The United States Supreme Court reiterated in Estelle v. McGuire, 502 U.S. 62, 67-68 (1991):

> [This Court] ha[s] stated many times that "federal habeas corpus relief
> does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764,
> 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); see also Pulley v.
> Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874-75, 79 L.Ed.2d 29 (1984).
> Today, we reemphasize that it is not the province of a federal habeas
> court to reexamine state-court determinations on state-law questions.
> In conducting habeas review, a federal court is limited to deciding
> whether a conviction violated the Constitution, laws, or treaties of the
> United States. 28 U.S.C. § 2241 [West 2007]; Rose v. Hodges, 423
> U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975) (per curiam).

See also Nelson v. Estelle, 642 F.2d 903, 905 (5th Cir.[4] 1981) ("[F]ederal habeas

corpus is available only for the vindication of rights existing under federal law....")

14.  The Respondents questions whether any of Edwards's amended claims

sufficiently challenge the legality of his incarceration and sufficiently plead a

violation of a right under federal law to be cognizable in this petition.  It is clear,

however, that several claims on their face do not meet this requirement.  Issues 2) -

4), 9) - 11), 14), 18), 19), 22), 23) and 26) do not implicate the legality of his

incarceration, do not implicate federal law, or do not specifically cite to federal

law.

15.  More specifically, issue 2) does not implicate the lawfulness of

Edwards's incarceration, but merely deals with the rules concerning habeas corpus

pleadings and whether to cite to case law.  Issues 4) and 9) state general challenges

that Alabama courts do not follow Supreme Court precedent or federal

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc),
the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth
Circuit decided before October 7, 1981.

constitutional principles, but do not state specific claims that relate to his

incarceration, and merely complain that general supremacy principles are not being

followed.  Issues 3), 14), and 26) involve complaints about prison conditions

involving the handling of mail or the adequacy of the law library.

"[C]onstitutional claims that merely challenge the conditions of a prisoner's

confinement, whether the inmate seeks monetary or injunctive relief, fall outside of

th[e habeas corpus] core and may be brought pursuant to § 1983 in the first

instance."  Nelson v. Campbell,  541 U.S. 637, 643 (2004).  Edwards's claims

concerning the adequacy of the prison library challenge the conditions of the

prison and are cognizable under Title 42 U.S.C. § 1983 (West 2007).  See Bounds

v. Smith, 430 U.S. 817, 818 (1977); See e.g., Ibarra v. Olivarri, 587 F.2d 677, 677

(5th Cir. 1979) (holding that claim that petitioner was denied access to law library

was a civil rights claim).  Similarly, Edwards's claim that the prison authorities

have been opening his mail does not impact the legality of his actual incarceration

to be cognizable in a habeas corpus petition, but challenges the conditions of his

incarceration.  See e.g., Lemon v. Dugger, 931 F.2d 1465, 1466-68 (11th Cir.

1991) (prisoner filed §1983 action claiming that prison authorities had opened up

legal mail).   Issues 10), 11), 18), 19), and 22) cite to only state law or rules and do

not appear to plead the violation of a federal right.  See McCullough v.

Singletary, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own

laws or rules provides no basis for federal habeas corpus relief, since no question

of a constitutional nature is involved.").  Finally, claim 23) challenges an Alabama

Supreme Court decision, Ex parte Seymour, 946 So. 2d 536 (Ala. 2006), given

United States Supreme Court precedent, but this claim does not explain how

Edwards's federal constitutional rights are implicated by the state court's decision

in Seymour, or how his incarceration is unlawful based on the court's decision in

Seymour.  Therefore, this claim does not appear to be cognizable in a federal

habeas corpus petition.

## C.    Exhaustion and Procedural Default

16. Finally, all of Edwards's amended claims are not subject to review,

because the claims remain unexhausted in state court, as he did not present the

claims throughout the state appellate courts.

> Because the exhaustion doctrine is designed to give the state courts a
> full and fair opportunity to resolve federal constitutional claims before
> those claims are presented to the federal courts, we conclude that state
> prisoners must give the state courts one full opportunity to resolve any
> constitutional issues by invoking one complete round of the State's
> established appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see Pruitt v. Jones, 348 F.3d

1355, 1359 (11th Cir. 2003) (holding that O'Sullivan applies to post-conviction

remedies); Smith v. Jones, 256 F.3d 1135, 1140-41 (11th Cir. 2001) (requiring

presentation of claims to the Supreme Court of Alabama for discretionary review to exhaust the claims under <u>O'Sullivan</u>).

17. Edwards failed to properly pursue his direct appeal, throughout the Alabama appellate courts.  Furthermore, Edwards failed to appeal his state post-conviction claims, by failing to file an application for rehearing and a petition for certiorari review in the Supreme Court of Alabama challenging the denial of his Rule 32 petition.

18. The amended claims that Edwards now presents would be precluded from being raised in the state court, because the issues could have been raised at trial or on direct appeal.  <u>See</u> Ala. R. Crim. P. 32.2(a)(3) and (5).  Further the claims would now be barred by Rule 32.2(c) of the Alabama Rules of Criminal Procedure, because any post-conviction petition now filed would be outside the limitations period.  Finally, any petition now filed raising these particular claims would be considered successive under Rule 32.2(b) of the Alabama Rules of Criminal Procedure.

19. The time for pursuing his direct appeal claims, and his first post-conviction petition claims throughout the Alabama courts, to the extent that his amended claims raise similar issues has, also long passed.  Rule 40(c) of the Alabama Rules of Appellate Procedure requires that the application for rehearing within 14 days from the issuance of the opinion.  Rule 39(c)(1) of the Alabama

Rules of Appellate Procedure requires that an application for rehearing be filed for the Supreme Court of Alabama to consider certiorari review. The state court issued its opinions in 2003 and 2005. (Ex. D and M)

20. This Court should not review Edwards's habeas claims because he failed to raise them throughout the Alabama courts. "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." Coleman v. Thompson, 501 U.S. 722, 732 (1992). "[T]he federal court may foreclose [his] filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal." Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).

> There is no dispute that this state court remedy . . . is no longer available to [Edwards]; the time for [pursuing such amended claims] has long passed ... Thus, [Edwards's] failure to present [these] federal habeas claims to the [Alabama courts] in a timely fashion has resulted in a procedural default of those claims.

O'Sullivan, 526 U.S. at 848.

21. The only way Edwards may overcome his procedural default to allow federal habeas review of his amended claims is to either demonstrate cause and actual prejudice to excuse the default or prove a fundamental miscarriage of justice requires review of his claims. See Coleman, 501 U.S. at 750; Smith, 256 F.3d at 1138. Edwards has not provided evidence to support either remedy for default.

Edwards has not explained why his amended habeas issues could not have been raised at trial and throughout the Alabama appellate courts.   Further, he has not shown any fundamental miscarriage of justice would arise from failure to review these claims -- he has not alleged or proved that he is actually innocent of the crimes.  See Schlup v. Delo, 513 U.S. 298, 324 (1995).

22.  Therefore, this Court should deny Edwards's the habeas relief he requests, and refuse to address the merits of his claims.

<div style="margin-left: 40%;">

Respectfully submitted,

Troy King (KIN047)
*Attorney General*
By:


s/Jean-Paul M. Chappell
Jean-Paul M. Chappell
*Assistant Attorney General*
#CHA073

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of November, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:   Robert Rex Edwards, AIS# 225984, Perry County Detention Center, P.O. Box 176, Uniontown, AL 36786

Respectfully submitted,

s/Jean-Paul M. Chappell (CHA073)
Jean-Paul M. Chappell (CHA073)
Office of the Attorney General
Alabama State House
11 South Union
Montgomery, AL  36130-0152
Telephone:  (334)  242-7300
Fax:  (334)  242-2848
E-Mail: jchappell@ago.state.al.us

ADDRESS OF COUNSEL:

Office of the Attorney General
Criminal Appeals Division
11 South Union Street
Montgomery, AL  36130
(334) 242-7300

340240/92252-001